723 So.2d 928 (1999)
STATE of Florida, Appellant,
v.
James Francis MANNEY, Appellee.
No. 98-1123.
District Court of Appeal of Florida, Fifth District.
January 15, 1999.
Robert A. Butterworth, Attorney General, Tallahassee, and Belle B. Turner, Assistant Attorney General, Daytona Beach, for Appellant.
John L. Woodard, III, Orlando, for Appellee.
DAUKSCH, J.
Appellant, state, timely appeals an order granting the motion of appellee, James Manney, to suppress.
This case arose when appellant charged appellee with four counts of DUI manslaughter and with four counts of vehicular homicide. Appellee filed a motion to suppress hospital records obtained by Trooper Scott Walter without a subpoena and notice to him. Following a hearing, the trial court entered an order granting appellee's motion to suppress on the ground that the records had been illegally obtained.
Florida Highway Patrol Trooper Scott Walter, a homicide investigator, testified at the suppression hearing that he has investigated more than 150 traffic homicides. Between 30 and 40% of the accidents involved alcohol or drugs. Walter testified that he performed a criminal traffic accident investigation of an accident which had occurred on a straight five-lane highway. When he arrived at the scene at 7:22 p.m., he saw a Lincoln on the side of the road with heavy front-end damage and another vehicle with extensive damage. The second vehicle was unrecognizable. There was a deceased female behind the wheel of the second vehicle and a deceased female underneath the front end of the vehicle. Walter additionally learned that two three-year old children, the sons of the women, had been killed. They had been taken to the hospital by the time he arrived on the scene. Appellee, the driver of the Lincoln, had also been taken to the hospital.
Walter determined that appellee had been traveling westbound at the time of the accident and that he had crossed over the center line and struck the other vehicle which had been in the outside eastbound lane. Based upon the physical evidence at the scene, he determined that appellee was at fault and that he had been reckless. The evidence consisted of scrape marks, the final resting position of both vehicles, the apparent speed of the vehicles, the rainy weather and the light traffic at the time of the accident.
Walter went to the Orlando Regional Medical Center Hospital between 9:15 and 9:30 *929 p.m. where he first saw appellee on a gurney in the emergency room. He had some abrasions on his arms and knees and a cut on his chin. He was combative and had to be restrained. Specifically, he was struggling to get up and to kick his arms and legs free of the restraints. Walter testified that a combative demeanor is sometimes consistent with an individual who is under the influence. He got close enough to smell appellee's breath but he did not detect an odor of alcohol.
Walter asked the nurse if anyone had drawn any legal blood or taken a toxicological screening from appellee and she said no to the first question and yes to the second. Familiar with the hospital's policy concerning toxicology and alcohol reports, Walter asked the nurse for a copy of the toxicological screening. The nurse gave him a copy of the report after he signed a hospital release. At trial, he identified a form similar to the one he had signed that evening. Three other hospitals were listed at the top of the form. The form reads as follows:
 RELEASE OF TEST RESULTS FOR
 ALCOHOL, CHEMICAL SUBSTANCES,
 OR CONTROLLED SUBSTANCES TO
 A LAW ENFORCEMENT OFFICER
 I__________________________
 Officer's Name and Badge Number
 have probable cause to believe that a motor
 vehicle driven by or in the actual physical
 control of__________________
 (Patient's Name)
while under the influence of alcohol, any chemical substance, or any controlled substances, has caused the death or serious bodily injury to any person.
Pursuant to Florida Statutes, Section 316.1933, I request the ORLANDO REGIONAL HEALTHCARE SYSTEM, its employees and agents, release to the law enforcement officer listed above the patient's test results relating to the alcoholic content of the patient's blood or the presence of chemical substance or controlled substance in the patient's blood.
The bottom of the form contains blanks for the officer's signature and badge number, for the date and time and for a witness's signature. Hospital policy provided that the hospital was
obliged upon request to release to a law enforcement agent the results of a medical blood alcohol or drug screen of a patient without the patients [sic] consent or subpoena as long as the patient has caused the death or serious bodily injury of a human being (this includes injury to the patient).
The officer was not permitted to have any other portion of the patient's medical record. The report signed by Walter indicated that cocaine and cannabinoids were present in appellant's blood and urine. Alcohol was not detected.
Walter asked the nurse to draw a second sample of appellee's blood which he submitted to the Florida Department of Law Enforcement's chemist and toxicologist. The sample did not test positive for alcohol or any controlled substances.
Appellant's attorney indicated during the suppression hearing that appellant had later obtained appellee's medical records by subpoena with notice to appellee. Appellee's attorney said that the records had been sealed pending the outcome of the hearing.
Following the hearing, the trial court entered an order granting appellee's motion to suppress. The court found that Walter had obtained appellee's medical records in violation of his "statutory doctor/patient privilege."
Appellant contends on appeal that the trial court erred by granting appellee's motion to suppress the medical records obtained by Walter on the ground that 1) he reasonably relied in good faith on the hospital's established medical policy that release of the records was lawful; and 2) it later obtained the records through a subpoena. Relying upon Hunter v. State, 639 So.2d 72 (Fla. 5th DCA), rev. den., 649 So.2d 233 (Fla.1994), it contends that it is permitted to compel disclosure of a patient's medical records through a subpoena provided the patient is first provided with notice before the subpoena is issued. Citing State v. Wenger, 560 So.2d 347 (Fla. *930 5th DCA 1990), it notes that medical records obtained pursuant to a subpoena without notice to the patient are subject to being suppressed.
Further relying upon State v. Rutherford, 707 So.2d 1129 (Fla. 4th DCA 1997), rev. den., 718 So.2d 171 (Fla.1998), appellant contends that the deterrent purpose of the exclusionary rule is lost in a case in which the police did not engage in willful or negligent conduct which has deprived an individual of a particular right. It maintains that application of the exclusionary rule to the facts of this case will not serve the deterrent purpose of preventing future prosecutorial misconduct because it is good faith police misconduct which is at issue. Appellant argues alternatively that any impropriety in this case was committed by the hospital, a private entity which is not governed by the fourth amendment.
We reverse. In Rutherford, the case upon which appellant relies, the state subpoenaed the patient's medical records without providing notice to the patient. The hospital complied with the state's request. The trial court suppressed the records on the ground that the state had failed to comply with the notice provision in section 395.3025(4)(d), Florida Statutes (1995) and the procedural requirements in Hunter and the district court affirmed. Significantly, the trial court in Rutherford expressly rejected the state's belated request to show the trial court the relevancy of the medical records already obtained so that it could subpoena them.
In Hunter, this court held that a patient must be given notice before the state's issuance of an investigative subpoena. If the patient objects, the state is required to obtain judicial approval before obtaining the records by showing their relevancy to the criminal investigation. It is only after the trial court determines that the state has a compelling interest to obtain a patient's medical records that the state may do so, not before. In Rutherford, the court, relying upon Shaktman v. State, 553 So.2d 148 (Fla. 1989), held that the state must show a compelling interest[1] for obtaining the records and that it has used the least intrusive means to invade the patient's right to privacy "which, `at a minimum, necessitate[s] judicial approval prior to the state's intrusion into a person's privacy.' "Rutherford, 707 So.2d at 1131. It further noted that the requirement that the trial court authorize the issuance of a subpoena after notice to the patient was the legislature's way of ensuring that the state comply with the procedural safeguards before intruding into the patient's privacy right. Thus, as this court recognized in Hunter, the role of the trial court is to act as a protective shield in guarding the patient's privacy right.
Notwithstanding the foregoing, we find that appellant is not precluded from obtaining appellee's medical records based upon its proper issuance of a subpoena with notice to appellee. We agree with Judge Polen's dissent in Rutherford, however, that if appellee objects, appellant may not use the improperly obtained medical records to establish their relevancy to the criminal investigation. Rather, it must establish facts independent of the records themselves. Judge Polen correctly recognized that in Hunter, this court held that the state's issuance of a second subpoena to compel disclosure of medical records was proper after its first subpoena was quashed by the trial court for failure to provide notice to the defendant. Thus, we agree with appellant in the present case that failure to follow the proper statutory requirements for compelling the disclosure of medical records is not necessarily fatal to issuance of the records where the records are later sought through proper means.
REVERSED and REMANDED for proceedings consistent with this opinion.
GRIFFIN, C.J., and THOMPSON, J., concur.
NOTES
[1] The state may establish a compelling interest by showing that the police have a reasonable founded suspicion that the records sought contain information relevant to an ongoing criminal investigation. See Rutherford, 707 So.2d at 1131.