794 So.2d 712 (2001)
The STATE of Florida, Petitioner,
v.
Joanne FAHNER, Respondent.
No. 3D00-2574.
District Court of Appeal of Florida, Third District.
September 19, 2001.
*714 Robert A. Butterworth, Attorney General, and Roberta G. Mandel, Assistant Attorney General, for petitioner.
Bennett H. Brummer, Public Defender, and Bruce Rosenthal, Assistant Public Defender, for respondent.
Before SCHWARTZ, C.J., and COPE and SORONDO, JJ.
COPE, J.
Under Florida law, a subpoena can be issued for an individual's hospital records upon "proper notice by the party seeking such records to the patient or his or her legal representative." § 395.3025(4)(d), Fla. Stat. (Supp.1998). In this case the State issued an investigative subpoena for the hospital records of respondent Joanne Fahner, defendant below, but defendant did not receive notice that the State had done so.
The question presented by this petition for writ of certiorari is whether the State is permitted to issue a second subpoena for the same hospital records, upon proper notice. We conclude that the answer is yes. In so ruling, we agree with the Fifth District's opinion in State v. Manney, 723 So.2d 928 (Fla. 5th DCA 1999), and Judge Polen's dissent in State v. Rutherford, 707 So.2d 1129, 1133-34 (Fla. 4th DCA 1997) (en banc).

I.
The State conducted an investigation of the defendant for driving under the influence ("DUI") with property damage,[1] and reckless driving.[2] The date of the offense was November 17, 1998.
On December 2, 1998, the assistant state attorney signed a "Notice of Investigative Subpoena for Medical Records," intended for the defendant. The notice indicated that the State would serve a subpoena in ten days on Mariners Hospital for the defendant's post-accident medical records, and that this notice was being given pursuant to section 395.3025, Florida Statutes.[3]
According to the defendant's brief in the circuit court, "On or about December 2, 1998, the State of Florida either attempted to serve the Defendant or mail to the Defendant a Notice of Investigation Subpoena for Medical Records. The Defendant was never served with the aforesaid Notice nor was she in possession of the Notice."
On December 15, 1998, the State filed an information, and later an amended information, charging defendant with DUI and reckless driving. At some point, counsel was appointed for defendant.
*715 At the end of December, the state served its subpoena on the records custodian of Mariners Hospital, and the hospital produced the defendant's medical records in response to the subpoena.
Defendant moved to suppress the hospital records, contending that the defendant never received notice of the State's subpoena. The county court granted the motion, but ruled that the State could resubpoena the hospital records upon giving proper notice to the defendant.
The State issued a new subpoena and gave proper notice. The defense objected to the subpoena. Relying on the Fourth District's Rutherford decision, the defendant argued that the State cannot be given a second opportunity to subpoena the same hospital records. See Rutherford, 707 So.2d at 1132-33. The county court instead decided to follow the Fifth District decision in State v. Manney. The county court overruled the defense objection and allowed the State to issue a second subpoena for the defendant's hospital records.
Thereafter the defendant entered into a plea agreement with the State whereby she pled guilty but reserved the right to appeal the order allowing the issuance of a second subpoena for her hospital records.[4] The defendant appealed to the circuit court. The appeal was heard by a single circuit judge, who found the Fourth District decision in Rutherford to be more persuasive than the Fifth District decision in Manney. The circuit court thereupon reversed the conviction.
The State has petitioned this court for a writ of certiorari.

II.
The defendant initially contends that this is not a proper case for exercise of certiorari jurisdiction by this court. We reject that argument. There is at present a decisional conflict between the district courts of appeal on the legal issue presented by this case. Compare Manney with Rutherford and State v. Johnson, 751 So.2d 183 (Fla. 2d DCA), review granted, 767 So.2d 461 (Fla.2000). As this case illustrates, courts within this district are issuing conflicting rulings on the same legal issue.
It is appropriate for this court to exercise discretion to resolve the conflict within the Third District so that a uniform rule will be applied, until such time as the Florida Supreme Court authoritatively resolves the conflict statewide. See Haines City Community Development v. Heggs, 658 So.2d 523, 530-31 & n. 14 (Fla.1995).
The defendant argues, however, that there are factual issues which have not been clearly resolved in the present record. The defendant says that it is not clear whether,[5] and how, the State attempted to provide notice to the defendant of the original subpoena.
We are unpersuaded by this objection as well. The defendant is estopped from complaining about the adequacy of the appellate record, given that the defendant entered into a plea bargain which reserved the right of the defendant to appeal from the county court to the circuit court. It is too late now for the defendant to complain about the state of the appellate record. In any event, the factual issues the defendant attempts to raise are immaterial to the legal issue presented.

*716 III.
In conducting its DUI investigation, the State issued a subpoena to Mariners Hospital for "all medical records of Joanne Fahner (D.O.B.: 11/24/66; date of hospitalization 11/17/98) pertaining to blood alcohol results and/or impairment."
Under Florida law, a hospital's patient records can be obtained by subpoena, but the statute requires "proper notice by the party seeking such records to the patient or his or her legal representative." § 395.3025(4)(d), Fla. Stat. (Supp.1998).[6]
The patient records are the business records of the hospital. The evident purpose of the statute is to give the patient an opportunity to object to the subpoena if the patient has any legally sufficient reason why the subpoena should be quashed or modified.
In the present case the defendant did not receive the notice. This deprived her of the opportunity to object to the subpoena.
Logically, where there has been a failure of notice to the defendant, the cure is to give proper notice. As we see it, the correct procedure is (a) to quash the first subpoena; (b) allow the State to issue a new subpoena while giving the defendant proper notice; and (c) allow the defendant the opportunity to make any legally sufficient argument she may have for the quashing of the second subpoena. We find ourselves in agreement with the Fifth District decision in Manney, and with the views expressed in Judge Polen's dissent in Rutherford.
In the present case the State served a second subpoena on proper notice to the defendant. This allowed the defendant a chance to explain what defense she had to the subpoena for her hospital record. She had no defense.
The defendant's response to the second subpoena was to argue that the State cannot serve a second subpoena after the first one is quashed. That argument is unsound, and the defendant presented no other basis for quashing the second subpoena.

IV.
We have carefully considered the reasoning of the majority opinion in Rutherford, but are not persuaded thereby. The Rutherford majority expressed the fear that if the State can reissue the same subpoena for hospital records, this will eliminate any incentive for the prosecutor to follow the notice requirement of paragraph 395.3025(4)(d). 707 So.2d at 1132-33.
The Rutherford majority concluded that the only effective means of securing compliance with the statute is to exclude the medical evidence obtained by the first subpoena, and prohibit the State from issuing a second subpoena. While the Rutherford decision suggested that this extreme remedy would be confined to cases in which the State made no effort to give notice at all, 707 So.2d at 1132, the court subsequently extended this rule to exclude medical evidence where the State attempted to give notice but made a mistake in the address. *717 Klossett v. State, 763 So.2d 1159 (Fla. 4th DCA 2000).
By its terms the Rutherford opinion invokes the Fourth Amendment exclusionary rule so as to exclude the hospital records from use at trial. 707 So.2d at 1132. We believe the Rutherford court overlooked the distinction which is drawn between an actual search and seizure on one hand, and the issuance of a subpoena for documents on the other.
Professor LaFave has explained that the leading case on Fourth Amendment limitations on the subpoena power is Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946). 2 Wayne R. LaFave, Search and Seizure § 4.13(a), at 726 (3d ed.1996). According to Professor LaFave:
The Court, recognizing the confusion in the case law as to the applicability of the Fourth Amendment, stated that compliance with a subpoena presented no question of an actual search or seizure, and that the Fourth Amendment was applicable, if at all, only by analogy because the subpoena merely involved a "so called `figurative' or `constructive' search."
LaFave, supra, § 4.13(a), at 726 (quoting Oklahoma Press); see Donovan v. Lone Steer, Inc., 464 U.S. 408, 414-15, 104 S.Ct. 769, 78 L.Ed.2d 567 (1984).
The Florida Supreme Court has said:
Subpoenas duces tecum are different from search warrants and are indisputably less intrusive. While there is no opportunity to challenge a search warrant, a subpoena duces tecum is subject to a motion to quash prior to the production of the requested materials. While a search warrant may involve the police rummaging through one's belongings and may involve the threat or actual use of force, a subpoena duces tecum requires the subpoenaed person to bring the materials sought at a time and place described in the subpoena.
Dean v. State, 478 So.2d 38, 42 (Fla.1985) (citation and internal quotation marks omitted); 14A Fla. Jur.2d Criminal Law § 635 (2001).
"The use of a properly limited subpoena does not constitute an unreasonable search and seizure under the fourth amendment." State v. Tsavaris, 394 So.2d 418, 426 (Fla.1981), receded from in part on other grounds, Dean v. State, 478 So.2d at 42.
Under the Fourth Amendment:
All that is required is that the subpoenaed materials be relevant to the investigation being conducted and that the subpoena not be overly broad or burdensome. A proper subpoena is one that is properly limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome.
Tsavaris, 394 So.2d at 426-27; see Donovan v. Lone Steer, Inc., 464 U.S. at 414-15, 104 S.Ct. 769; Oklahoma Press, 327 U.S. at 209, 66 S.Ct. 494; LaFave, supra, § 4.13(a), at 726-27. Certainly the reasonableness requirement was met in the present case.
"Whether the exclusionary sanction is appropriately imposed in a particular case is an issue separate from the question of whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." Jean M. Allison & Robin C. Larner, Preliminary Investigation and Collection of Evidence, in Phillip A. Hubbart et al., Florida Criminal Practice Service § 5:29, at 49 (1993) (footnote omitted).
The exclusionary rule has evolved in the context of actual searches and seizures, not investigative subpoenas. In the case of a *718 search or seizure (unlike a subpoena), the government intrudes into a citizen's home or business, or searches the citizen's person, or wiretaps the citizen's conversations. The degree of intrusion is significant. If the search or seizure was conducted without probable cause, or without a warrant where a warrant was required, the exclusionary rule is applicable.
A subpoena, by contrast, does not involve a physical intrusion of the type just mentioned. Cases can be found in which the exclusionary rule was applied to a subpoena, but in those cases the officer serving the subpoena proceeded without authority to conduct an actual physical search of the premises. In Dean v. State, the officer served a subpoena and
immediately thereafter the state officials searched the corporate offices and seized the corporate records, some that were not even covered by the subpoena. There was no opportunity to oppose the subpoena by filing a motion to quash. These methods cannot be condoned. A subpoena duces tecum is not a substitute for a search warrant, nor may its use be a subterfuge for a warrantless search and seizure.
478 So.2d at 42. The court remanded for a hearing on the motion to suppress. To the same effect see LaFave, supra, § 4.13(e), at 745 n. 122 (collecting cases).
The present case involved a routine subpoena for records. No one searched the hospital's business office or the defendant's home. See Oklahoma Press, 327 U.S. at 195, 66 S.Ct. 494. The subpoena requested the production of records, but without any physical intrusion. As is customary with subpoenas, objections were resolved by the court, not physical invasion of person or property. See LaFave, supra, § 4.13(e), at 746.
Apart from Rutherford, the parties have not called our attention to any Fourth Amendment authority which would require application of the exclusionary rule in the context of a routine document subpoena, and we are aware of none. We conclude that the subpoena was reasonable within the meaning of the Fourth Amendment and that in any event the Fourth Amendment exclusionary rule does not apply under the circumstances present here.[7]
The Rutherford court expressed a fear that absent a rule excluding evidence, assistant state attorneys would wilfully violate the law by intentionally issuing subpoenas for medical records without giving the statutory notice. The trial court has ample power to deal with such a situation if it should arise, by imposing a monetary or other appropriate sanction on the offending assistant state attorney. See In re Report of the Grand Jury, 533 So.2d 873, 876 (Fla. 1st DCA 1988) ("extreme remedies are not warranted, since a contempt citation or other attorney discipline will serve the purpose of curtailing such conduct"); see also The Florida Bar v. Cox, 26 Fla. L. Weekly S 331 (Fla. May 17, 2001) (imposing discipline on federal prosecutor for misleading the court).
In other areas of criminal practice, the failure to give notice or comply with a discovery requirement does not automatically result in exclusion of evidence. Instead, the relevant inquiry is whether there has been prejudice to the accused. See State v. Schopp, 653 So.2d 1016 (Fla. 1995) (discovery); Richardson v. State, 246 So.2d 771, 774 (Fla.1971) (same); Barbee v. State, 630 So.2d 655, 655-56 (Fla. 5th DCA *719 1994) (ten-day notice requirement for similar fact evidence).
In the present case the claimed harm was the loss of the defendant's opportunity to object to the subpoena for hospital records. That harm has been cured by quashing the original subpoena and allowing the defendant an opportunity to object to the new subpoena.[8]

V.
Because the issue now before us is a recurrent one in DUI cases, the legislature may wish to consider the matter at a future session. The statute authorizing the state attorney to issue an investigative subpoena is found in section 27.04, Florida Statutes, but the statute does not contain a cross reference or other language calling attention to the fact that notice must be given under section 395.3025 in cases in which a patient's hospital records are subpoenaed. Adding an appropriate crossreference in section 27.04 would help assure that the notice requirement for hospital records is not overlooked. It may also be advisable for section 395.3025 to spell out how notice is to be given and what proof of notice must be supplied.

VI.
For the reasons stated, we quash the circuit court order and reinstate the county court's ruling. We certify direct conflict with Rutherford, Klossett, and Johnson.
Certiorari granted; direct conflict certified.
NOTES
[1] See § 316.193(3)(c), Fla. Stat. (1997).
[2] See id. § 316.192.
[3] The notice stated:

NOTICE OF INVESTIGATIVE SUBPOENA FOR MEDICAL RECORDS
TO: JOANNE FAHNER
PLEASE TAKE NOTICE that the Office of the State Attorney has procured from the Clerk of Court, the attached subpoena for the medical records of JOANNE FAHNER, from MARINERS HOSPITAL.
This Notice is given pursuant to Florida Statutes section 395.3025. This subpoena will be served upon the hospital ten (10) days from the mailing of this notice. Hand delivered the 2d day of December, 1998.
The text of the attached subpoena is quoted in part III of this opinion.
[4] The State and the defendant agreed that the order overruling the defendant's objection to the second subpoena was a dispositive order.
[5] As we read the defendant's circuit court brief, quoted earlier, the defendant conceded that the State attempted to provide notice to the defendant.
[6] The statute provides, in pertinent part:

(4) Patient records are confidential and must not be disclosed without the consent of the person to whom they pertain, but appropriate disclosure may be made without such consent to:
. . . .
(d) In any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice by the party seeking such records to the patient or his or her legal representative.
[7] Florida's law governing searches and seizures must be interpreted "in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court." Fla. Const. art. I, § 12 (amended 1982); Holland v. State, 696 So.2d 757, 759 (Fla.1997); Perez v. State, 620 So.2d 1256, 1258 (Fla.1993).
[8] The statutory provision at issue here applies equally to criminal and civil cases. If a civil action were being prosecuted by an injured plaintiff (or the estate of a decedent) who was a victim of a DUI-caused accident, and if there had been a failure to give proper notice upon issuance of a subpoena for the defendant's post-accident hospital records, there would be no sound reason to preclude the issuance of a new subpoena for the hospital records upon proper notice.