814 So.2d 390 (2002)
STATE of Florida, Petitioner,
v.
Zina JOHNSON, Respondent.
No. SC00-514.
Supreme Court of Florida.
March 21, 2002.
*391 Robert A. Butterworth, Attorney General, Robert J. Krauss, Senior Assistant Attorney General, Chief of Criminal Law, Tampa, and Erica M. Raffel, Assistant Attorney General, Tampa, FL, for Petitioner.
Jeffrey A. Haynes of Haynes and Miller, P.A., Sarasota, FL, for Respondent.
PER CURIAM.
We have for review the opinion in State v. Johnson, 751 So.2d 183 (Fla. 2d DCA 2000), which certified conflict with the opinion in State v. Manney, 723 So.2d 928 (Fla. 5th DCA 1999). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We quash Johnson as explained below.

I. FACTS
Zina Johnson was involved in a single-car accident in which the passenger died. Johnson was hospitalized with injuries, and in the course of medical treatment, her blood was drawn. In seeking to prosecute Johnson for DUI manslaughter, the State attempted to notify her that her hospital records were being subpoenaed, pursuant to section 395.3025, Florida Statutes (1997).[1] After its attempts to serve notice *392 were unsuccessful, the State utilized its investigative subpoena power under section 27.04, Florida Statutes (1997)[2] to obtain the records.
After the State filed a one-count information charging Johnson with DUI manslaughter, she moved to suppress her medical records, asserting that they were obtained in violation of the notice requirement of section 395.3025(4)(d). The trial court held an evidentiary hearing at which time Willie Brown, Jr., an investigator in the state attorney's office, testified relative to his attempts to serve notice. He first attempted to find Johnson in the hospital, but she had been discharged. He then obtained her last known address from the state attorney's database and tried to serve notice in person, but learned that she no longer lived at the address. A former neighbor of Johnson's told the investigator that he believed she had moved to St. Petersburg. Brown traveled to St. Petersburg and unsuccessfully attempted to obtain an address from the St. Petersburg Police Department. In his search, Brown also unsuccessfully attempted to contact Johnson's mother and Rodney Williams (the decedent's husband) in an effort to obtain a current address. Brown, however, neither checked the State's driver's license records for an address, nor did he request a forwarding address from the post office, both of which contained her correct address.
In ruling on Johnson's motion to suppress, the trial court found that the State's failure to properly effect service was not due to any action by Johnson, but was entirely the fault of the State as it had "failed to use basic methods of locating a person, including a driver's license check, searching utility records, or contacting the post office." In granting the motion to suppress, the court explained, "Under the circumstances presented in this case, the medical records and blood tests must be excluded. While the Court is aware that this ruling may impede the State's ability to proceed with this action, the Court ... finds that the State's failure to follow proper procedures necessitates this result." The Second District affirmed, relying on State v. Rutherford, 707 So.2d 1129 (Fla. 4th DCA 1997), and certified conflict with Manney, 723 So.2d at 928.
It is the State's position that in light of the fact that Johnson will not suffer prejudice and that the failure to serve notice was not willful, the proper remedy is to allow the State an opportunity to subpoena the medical records in accordance with section 395.3025(4)(d). The issue before this Court is whether the trial court under the facts of this case properly used the exclusionary rule[3] to remedy a violation of section 395.3025.

*393 II. THE APPLICABLE LAW
A patient's medical records enjoy a confidential status by virtue of the right to privacy contained in the Florida Constitution, and any attempt on the part of the government to obtain such records must first meet constitutional muster.[4] The right to privacy is not absolute and will yield to compelling governmental interests. Therefore, in reviewing a claim of unconstitutional governmental intrusion, the compelling state interest standard is the appropriate standard of review.[5] Clearly, the control and prosecution of criminal activity is a compelling state interest, and this Court has held that a subpoena issued during an ongoing criminal investigation satisfies a compelling state interest when there is a clear connection between illegal activity and the person whose privacy has allegedly been invaded.[6]
Section 395.3025 is a legislative attempt to balance a patient's privacy rights against legitimate access to medical records. The provision begins with a recognition of the confidential nature of medical records, and subsection (4)(d) provides that before the records can be made available in any civil or criminal action, the patient must be put on notice and a subpoena must issue from a court of competent jurisdiction. The obvious purpose behind the notification requirement is to permit the patient to assert any legal objections he or she may have to the subpoena before the records are produced.[7] It is in this context that we are asked to review the consequences of the State's failure to comply with the statute.

III. THE PRESENT CASE
The issues before us are whether the State can avoid the procedural requirements of section 395.3025(4)(d) by use of its investigative subpoena power, and if not, what sanction is to be imposed when the State does not comply with these procedural requirements. Based on the clear language of the statute, we hold that the state attorney's subpoena power under section 27.04, Florida Statutes (1997), cannot override the notice requirement of section 395.3025(4)(d). See Ussery v. State, 654 So.2d 561, 562 (Fla. 4th DCA 1995); Hunter v. State, 639 So.2d 72 (Fla. 5th DCA 1994); State v. Buchanon, 610 So.2d 467, 468 (Fla. 2d DCA 1992); State v. Wenger, 560 So.2d 347 (Fla. 5th DCA 1990). To hold otherwise would render the statute meaningless.
Having determined that section 395.3025 is applicable, we next address the *394 consequences of the State's noncompliance in light of the historic purpose of the exclusionary rule. This judicially created remedy is designed to discourage governmental misconduct and safeguard against future violations.[8] This remedy, however, must be balanced against the desire to have fact-finders receive all relevant and probative evidence.
The Second District's opinion extends the exclusionary rule by foreclosing the State from subpoenaing Johnson's records prospectively even in a constitutional and statutorily permissible manner because of its past transgression. Although the exclusionary rule can serve its historic purpose when the State does not make a good faith effort to comply with the procedural requirements of section 395.3025, we do not find that to be the case in this instance.
An important consideration in this case is the State's repeated attempts to meet the statutory requirements, and the fact that some of the effort was misdirected is not dispositive and should not result in a per se rule that prohibits future compliance.[9] Accordingly, we quash the Second District's decision in Johnson, and disapprove of the opinion in Rutherford, to the extent that it would apply the exclusionary rule any time the State failed to comply with the statute, without regard to whether the State made a good faith effort to comply with the statute.[10] However, we also disapprove of Manney to the extent that the Fifth District would never preclude the State from using the medical records, so long as the State subsequently complies with section 395.3025 by establishing reasonable suspicion through the introduction of facts that are independent of the records themselves. We remand for proceedings consistent with this opinion.
It is so ordered.
ANSTEAD, LEWIS, and QUINCE, JJ., concur.
PARIENTE, J., concurs with an opinion, in which ANSTEAD, J., concurs.
WELLS, C.J., and SHAW and HARDING, JJ., concur in result only.
PARIENTE, J., concurring.
I concur in the majority opinion because, as the facts in this case demonstrate, the actions of the state attorney's office reveal a good faith effort on the part of the State to put the defendant on notice. I write separately to emphasize the necessity for application of the exclusionary rule when the State does not make a good faith effort to provide the statutorily required notice under section 395.3025(4)(d), a statute designed to protect the privileged and confidential status accorded to a patient's medical records. I agree with Judge Gross's reasoning in State v. Rutherford, 707 So.2d 1129, 1132 (Fla. 4th DCA 1997):
The [exclusionary] rule is properly applied in cases where evidence is obtained through a constitutional violation, e.g., State v. Albury, 453 So.2d 461, 462 (Fla. 4th DCA 1984), a violation of a statute implementing or expanding on a constitutional right, see Robertson v. State, 604 So.2d 783 (Fla.1992); D.F. v. State, *395 682 So.2d 149 (Fla. 4th DCA 1996); Gulley v. State, 501 So.2d 1388 (Fla. 4th DCA 1987); State v. Slaney, 653 So.2d 422 (Fla. 3d DCA 1995), or where there has been an improper intrusion into a privileged relationship. See State v. Caballero, 510 So.2d 922 (Fla. 4th DCA 1987) (evidence obtained in violation of attorney-client privilege). In weighing the application of an exclusionary rule, the supreme court has found the following passage to be "particularly insightful:"
The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused.

State v. White, 660 So.2d 664, 666-67 (Fla.1995) (quoting United States v. Leon, 468 U.S. 897, 919, 104 S.Ct. 3405, 3418, 82 L.Ed.2d 677 (1984) (quoting Michigan v. Tucker, 417 U.S. 433, 447, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182 (1974))).
I also agree with Judge Gross's well-reasoned explanation in Rutherford of why application of the exclusionary rule would promote these goals when the State fails to make a good-faith effort to comply with the statute:
Exclusion of evidence in this case will serve its purpose and reach a type of governmental action that an exclusionary rule was designed to deterprosecutorial misconduct that is likely to be prevented if the evidence seized is suppressed. See White, 660 So.2d at 667. This case does not involve the errors of police officers with limited legal training, but of prosecutors who have had the benefit of law school and on-the-job experience and who have taken an oath to uphold the Florida Constitution. See R. Regulating Fla. Bar 3-4.7. The requisite procedures for obtaining hospital records notice to the patient and judicial revieware not complex. The state's required showing under Hunter to obtain the recordsthat they are relevant to a pending criminal investigationis not onerous. When the cost of losing evidence is compared to the minimal benefits realized from violating the statute, then prosecutorial compliance with the statute will be likely to occur in the future.
Without the threat of the exclusion of evidence, the incentive for a prosecutor to comply with section 395.3025(4)(d) is minimal. The statute does not create any other remedy for a violation of its procedures. The experience of an earlier generation was that alternative remedies to the exclusionary rule were "worthless and futile." Mapp v. Ohio, 367 U.S. 643, 652, 81 S.Ct. 1684, 1690, 6 L.Ed.2d 1081 (1961); see also People v. Cahan, 44 Cal.2d 434, 282 P.2d 905, 911-12 (1955). Prosecutors enjoy absolute immunity from lawsuits for damages in the performance of their quasi-judicial functions of initiating or maintaining a prosecution. See Office of the State Attorney, Fourth Judicial Circuit of Florida v. Parrotino, 628 So.2d 1097 (Fla. 1993); Hansen v. State, 503 So.2d 1324 (Fla. 1st DCA 1987). If, as the state argues, a statutory violation could be erased by a later evidentiary showing of relevance, then convenience and expediency might overwhelm the privacy interests that the statute seeks to protect.
Id. at 1132-33. Thus, I agree with the majority's disapproval of Manney to the *396 extent that the Fifth District would never preclude the State from using the evidence.
ANSTEAD, J., concurs.
NOTES
[1] Section 395.3025 provides in pertinent part:

(4) Patient records are confidential and must not be disclosed without the consent of the person to whom they pertain, but appropriate disclosure may be made without such consent to:
. . . .
(d) In any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice by the party seeking such records to the patient or his or her legal representative.
§ 395.3025(4)(d), Fla. Stat. (1997).
[2] Section 27.04, Florida Statutes (1997), provides:

The state attorney shall have summoned all witnesses required on behalf of the state; and he or she is allowed the process of his or her court to summon witnesses from throughout the state to appear before the state attorney in or out of term time at such convenient places in the state attorney's judicial circuit and at such convenient times as may be designated in the summons, to testify before him or her as to any violation of the criminal law upon which they may be interrogated, and he or she is empowered to administer oaths to all witnesses summoned to testify by the process of his or her court or who may voluntarily appear before the state attorney to testify as to any violation or violations of the criminal law.
[3] As addressed below, the exclusionary rule prevents the State from taking advantage of evidence obtained through a constitutional violation by excluding the use of such evidence. See Craig v. State, 510 So.2d 857 (Fla.1987).
[4] Article I, section 23 of the Florida Constitution, which provides for the constitutional right to privacy, declares, "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life...."
[5] See Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544, 547 (Fla.1985) ("The right of privacy is a fundamental right which we believe demands the compelling state interest standard.").
[6] See Shaktman v. State, 553 So.2d 148, 152 (Fla.1989) ("[A] legitimate, ongoing criminal investigation satisfies the compelling state interest test when it demonstrates a clear connection between the illegal activity and the person whose privacy would be invaded.").
[7] See, e.g., State v. Fahner, 794 So.2d 712, 716 (Fla. 3d DCA 2001) ("The evident purpose of the statute is to give the patient an opportunity to object to the subpoenaif the patient has any legally sufficient reason why the subpoena should be quashed or modified."); Klossett v. State, 763 So.2d 1159, 1160 (Fla. 4th DCA 2000) ("The purpose of the notice requirement under section 395.3025(4)(d) is to allow the patient an opportunity to object to the release of his or her medical information, thus requiring the State to show the relevancy of the records requested before the subpoena issues.").
[8] See Shadier v. State, 761 So.2d 279, 284 (Fla.2000) ("[T]he exclusionary rule is a `judicially created remedy designed to safeguard [constitutional] rights generally through its deterrent effect.'") (quoting United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)).
[9] We stress that the State may not use information that it gathered from improperly obtained patient records when seeking a second subpoena.
[10] Rutherford is clearly distinguishable because in Rutherford the State made no attempt to comply with the statute.