912 So.2d 329 (2005)
Zachary R. FRANK, Appellant,
v.
STATE of Florida, Appellee.
No. 5D03-3657.
District Court of Appeal of Florida, Fifth District.
August 26, 2005.
Rehearing Denied October 7, 2005.
*330 James S. Purdy, Public Defender, and Nancy Ryan, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Lori N. Hagan, Assistant Attorney General, Daytona Beach, for Appellee.
ORFINGER, J.
Zachary R. Frank was involved in a two-car crash in which the driver of the other vehicle died. Frank was hospitalized with injuries, and in the course of medical treatment, his blood was drawn. About eight weeks after the crash, the investigating police officer obtained the results of Frank's blood alcohol test from the hospital without complying with the notice requirements of section 395.3025, Florida Statutes (2003). On appeal, Frank argues that the test results were improperly obtained by law enforcement, and that the trial court erred when it denied his motion to suppress. We agree and reverse for a new trial.
A patient's medical records enjoy a confidential status by virtue of the right to privacy contained in the Florida Constitution.[1] Any attempt on the part of the government to obtain such records must meet constitutional muster. State v. Johnson, 814 So.2d 390, 393 (Fla.2002). However, the right to privacy is not absolute and will yield to compelling governmental interests. Section 395.3025 represents the legislature's effort to balance a patient's privacy rights against the State's compelling interest in access to medical records. In pertinent part, section 395.2035(4)(d) provides:
(4) Patient records are confidential and must not be disclosed without consent of the person to whom they pertain, but appropriate disclosure may be made without such consent ...:
....
(d) In any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice by the parties seeking such records to the patient or his or her legal representative.
The purpose of the notification requirement is to permit the patient to assert any legal objections he or she may have to the issuance of a subpoena before the records are produced.[2]
Here, it is undisputed that law enforcement made no effort to comply with section 395.3025 prior to obtaining Frank's medical records. As a result, we are bound by the supreme court's holding in Johnson. In that case, the court held that where the State fails to establish that the *331 State, or its agents, made a good faith effort to comply with section 395.3025, any improperly obtained evidence must be excluded. Johnson, 814 So.2d at 394. This is true even if the State subsequently notifies the person whose records are sought, and, thereafter, subpoenas such records in compliance with the statute. Id.
The State urges affirmance of the order denying suppression, contending that the trial court's finding that the investigating officer did not act in bad faith is tantamount to finding that the officer acted in good faith. We disagree. While we do not believe that the officer set out to violate Frank's privacy rights, Florida law holds that police officers are charged with knowledge of the law. See Doctor v. State, 596 So.2d 442, 447 (Fla.1992). The "good faith" exception is based on an objective standard and expects officers to know the law. Stone v. State, 856 So.2d 1109, 1113 (Fla. 4th DCA 2003). Consequently, a law enforcement officer's misapprehension of the law does not equate to good faith. Sneed v. State, 876 So.2d 1235, 1238 (Fla. 3d DCA 2004).
Relying on Thomas v. State, 820 So.2d 382 (Fla. 2d DCA 2002), the State also urges a "no harm, no foul" analysis, arguing that because the test results were subsequently obtained pursuant to a subpoena following notice to Frank, he suffered no prejudice. We adopted that view several years ago in State v. Manney, 723 So.2d 928 (Fla. 5th DCA 1999). However, the supreme court expressly disapproved Manney in Johnson.
Having found error, we must determine whether that error was harmless that is, whether it can be said there is no reasonable possibility that the error contributed to the conviction. Sneed, 876 So.2d at 1235 (citing State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986)).
The harmless error test, as set forth in Chapman [v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)] and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction. See Chapman, 386 U.S. at 24, 87 S.Ct. at 828. Application of the test requires an examination of the entire record by the appellate court including a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict.
DiGuilio, 491 So.2d at 1135.
The State's expert witness, Dr. Goldberger, testified regarding the hospital's blood alcohol test. He interpreted the hospital's blood test as showing a .108 blood alcohol level (BAL). Dr. Goldberger admitted that there is some margin for error in such calculations; but even given that margin of error, he did not believe the test results supported an inference that Frank's BAL was .08 or lower at the time the blood was drawn. Based on that testimony, the jury was instructed:
To prove the crime of DUI manslaughter, the state must prove the following three elements beyond a reasonable doubt: One, Zachary Rae Frank drove or was in actual physical control of the vehicle; two, while driving or while in actual physical control of the vehicle, Zachary Rae Frank was under the influence of alcoholic beverages to the extent that his normal faculties were impaired or had a blood alcohol level of 0.08 or higher; three, as a result of Zachary *332 Rae Frank caused the death of Daniel Rosario.
(Emphasis added). In light of the jury instruction that the elements of the crime of DUI manslaughter could be satisfied by a finding of a BAL "of .08 or higher," we cannot say beyond a reasonable doubt that the error did not contribute to the verdict.
We take no pleasure in reaching this result, knowing that a retrial will be painful for the survivors of the victim killed in the crash. However, the law of our state compels this result.
Finding no merit in the other issues raised by Frank, we reverse and remand this matter for a new trial consistent with this opinion.
REVERSED AND REMANDED.
PALMER and MONACO, JJ., concur.
NOTES
[1] Article I, section 23 of the Florida Constitution, provides for the constitutional right to privacy: "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life...."
[2] An individual's constitutional right of privacy in medical records is not implicated by the State's seizure and review of medical records under a valid search warrant without prior notice or hearing. Limbaugh v. State, 887 So.2d 387, 397 (Fla. 4th DCA 2004), review denied, 903 So.2d 189 (Fla.2005). Consequently, the State has an available alternative if for some reason it is unwilling, or, unable, to comply with the requirements of section 395.3025(4)(d).