GROSS, C.J.
In this prosecution for doctor shopping, the trial judge suppressed the defendant’s patient contracts and statements from his doctors, which a police officer obtained without a subpoena or warrant, and denied suppression of the defendant’s pharmacy records, likewise obtained without a subpoena or warrant.[1] The state appeals that part of the order concerning the medical records, and the defendant cross-appeals the court’s ruling on the pharmacy records. We affirm the order in all respects.
I. FACTS
The facts are undisputed. A deputy arrested Jeffrey Sun’s brother for driving under the influence. In the car, the deputy found a notebook. Seeing that the notebook contained information on different pharmacies and dollar amounts, the deputy suspected doctor shopping. This suspicion led him to turn the notebook over to Detective Eric Keith. Detective Keith inspected the notebook and started an investigation that brought him to a CVS pharmacy in Juno Beach. There, Detective Keith sought the brother’s prescription history. The pharmacist helpfully pointed out that the brother had a twin, Sun, and gave Detective Keith patient profiles for both men. Visiting several other area pharmacies, Detective Keith obtained Sun’s patient profile from each, all without a warrant or a subpoena.
The investigation shifted into its next phase. Detective Keith compared all of Sun’s patient profiles to determine whether Sun had gotten the same or similar medications from two or more physicians within a thirty-day period. Sun had. Detective Keith proceeded to contact the three prescribing physicians. He asked each if they had a patient in their care *869 with Sun’s name and birth date, and each said yes. When asked, each doctor denied knowing Sun had been seeing other doctors who had been giving him the same or similar prescriptions. They provided written statements to that effect and handed over Sun’s signed patient contracts. In his probable cause affidavit, Detective Keith noted “they did not disclose the nature of any of Sun’s underlying health condition(s) that [necessitated] issuance of the prescriptions.” As with the pharmacy records, Detective Keith had neither a warrant nor a subpoena for these items.
The state charged Sun with oxycodone trafficking, contrary to subsection 89B.135(l)(c)l.a., Florida Statutes (2009), and withholding information from a practitioner, which is prohibited by subsection 893.13(7)(a)8., Florida Statutes (2009). Subsection 893.13(7)(a)8. proscribes the withholding of information from a practitioner to obtain a prescription for a controlled substance, when the person has obtained the same or a similar prescription from another practitioner within the past thirty days. This practice is known as doctor-shopping.
Sun moved to suppress the pharmacy records, the patient contracts, and the doctors’ statements. Sun offered three legal bases in support of the items’ suppression. First, he argued Detective Keith violated section 456.057, Florida Statutes (2009), which provides for the confidentiality of medical records and information and sets forth those circumstances that allow law enforcement to obtain them. Second, he contended that Detective Keith’s taking of the items violated his right to privacy under Article I, Section 23 of the Florida Constitution. Finally, Sun asserted the seizure was illegal under Article I, Section 12 of the Florida Constitution.
After a hearing, the trial judge granted Sun’s motion as to the patient contracts and doctors’ statements, but denied it as to the pharmacy records. Florida’s constitutional right to privacy and statutory doctor-patient privilege protected the patient contracts and doctors’ statements, and Detective Keith failed to follow the section 456.057 procedure to obtain them. Accordingly, the judge suppressed them. He ruled, however, that subsection 893.07(4), Florida Statutes (2009), empowered Detective Keith to obtain the pharmacy records without a warrant or subpoena, so he did not grant the motion to suppress those items.
II. THE STATE’S APPEAL
In challenging the suppression of Sun’s patient contracts and doctors’ statements, the state argues that Sun’s right to privacy and doctor-patient privilege were reduced once Detective Keith discovered possible doctor shopping, a criminal act implicating the state’s compelling interest in drug abuse prevention and control. The state’s narrow focus on its interest in obtaining the items misses the point. This case is not about the state’s interest in curbing drug abuse. Rather, it is about what the police can and cannot do in furthering that interest. We agree with the trial judge that Detective Keith wholly failed to follow the statutory procedure to obtain the items, and that suppression was the proper remedy.
A. The Relevant Law
Our analysis begins with Article I, Section 23 of the Florida Constitution, which in pertinent part provides: “Every natural person has the right to be let alone and free from governmental intrusion into the person’s private life except as otherwise provided herein.” This right to privacy is fundamental but not absolute. State v. Johnson, 814 So.2d 390, 393 (Fla.2002). Thus, the right will yield to a compelling state interest, a requirement that is *870 satisfied by an “ongoing criminal investigation ... when there is a clear connection between illegal activity and the person whose privacy has allegedly been invaded.” Id. The state constitutional right to privacy protects medical records. See id. (“A patient’s medical records enjoy a confidential status by virtue of the right to privacy contained in the Florida Constitution. ...”).
In addition to the constitutional right to privacy, section 456.057, Florida Statutes (2009), creates a broad doctor-patient privilege of confidentiality that protects both medical records and communications between a person and his doctor. See Acosta v. Richter, 671 So.2d 149, 15051, 154, 156 (Fla.1996) (contrasting the pre-1988 version of the statute that created “a limited statutory privilege of confidentiality for certain medical records” with the post-1988 version, similar in material respects to the current version, that created “a broad and express privilege of confidentiality as to the medical records and the medical condition of a patient” or, stated differently, “a physician-patient privilege of confidentiality for the patient’s personal medical information”).
Section 456.057 also lays out the procedures a third party must follow to obtain the release of medical records and confidential information. Similar to the hospital records statute at issue in Johnson, section 456.057 represents a “legislative attempt to balance a patient’s privacy rights against legitimate access to” the patient’s medical information. Johnson, 814 So.2d at 393. The statute establishes procedural safeguards which, if followed, allow the state to obtain protected information without contravening the privacy protection of Article I, Section 23. See State v. Rutherford, 707 So.2d 1129, 1131— 32 (Fla. 4th DCA 1997), disapproved on other grounds by Johnson, 814 So.2d 390.
Because Detective Keith did not follow the statutory procedures, there are only three real questions: (1) whether the patient contracts fall within the scope of the right to privacy in medical records; (2) whether the doctors’ statements fall within the scope of the doctor-patient privilege; and, if so, (3) whether the trial judge properly suppressed the items. We answer all three in the affirmative.
B. The Patient Contracts
The first subsection relevant to the state’s appeal is 456.057(7)(a), Florida Statutes (2009), which applies to medical records. In pertinent part, that subsection provides that
such [medical] records may not be furnished to, and the medical condition of a patient may not be discussed with, any person other than the patient or the patient’s legal representative or other health care practitioners and providers involved in the care or treatment of the patient, except upon written authorization of the patient. However, such records may be furnished without written authorization under the following circumstances:
[[Image here]]
3. In any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice to the patient or the patient’s legal representative by the party seeking such records.
§ 456.057(7)(a). To obtain medical records, the statute requires law enforcement to obtain a subpoena after notice to the patient. See id.
The definition of medical records, and thus the scope of subsection (7)(a), is provided in the immediately preceding subsection: “reports and records relating to [a doctor’s] examination or treatment [of the *871 patient], including X rays and insurance information.” § 456.057(6); see also State v. Shukitis, 60 So.3d 406 at 407-408 (Fla. 2d DCA 2010) (looking to subsection (6) for the definition of subsection (7)(a)’s “such records”).
Appellate courts have faced similar issues of scope. In those cases, the trial courts did not consider the applicability of subsection 456.057(7)(a) to records and information obtained from physicians, so the appellate courts remanded with instructions to “make specific findings as to which portions of the physician information amounted to” medical records per subsection (6). Shukitis, 60 So.3d at 409. See also State v. Wright, 59 So.3d 263 (Fla. 4th DCA 2011) (same); Lamb v. State, 55 So.3d 751 (Fla. 2d DCA 2011) (same); State v. Here, 67 So.3d 266 (Fla. 2d DCA 2011) (same).
There is no need to remand this case for the trial judge to determine whether the patient contracts were medical records. This case is procedurally distinguishable from the second district’s eases because the trial judge here applied the correct statute in evaluating the patient contracts. He correctly found that the contracts were medical records within the meaning of subsection 456.057(6).
The state urges us to narrowly define medical records as only those records “having to do with the actual examination and treatment of the patient,” which would exclude records involving information provided “prior to the examination, or not having anything to do with the examination or treatment.” We reject this reading. The plain language of the statute provides that medical records are “reports and records relating to [a doctor’s] examination or treatment [of the patient], including X rays and insurance information.” § 456.057(6). A patient contract is a record “relating to” the patient’s treatment— it is the document that starts the treatment.[2] The inclusion of “insurance information” within the definition indicates a broad scope, since such information exists outside of the doctor’s examination of the patient.
Accordingly, we hold that the patient contracts that Detective Keith obtained from Sun’s doctors were medical records protected by subsection 457.057(7)(a).
C. The Doctors’ Statements
We now turn to the statements from Sun’s doctors. The relevant subsection is 456.057(8), Florida Statutes (2009). It provides in full:
Except in a medical negligence action or administrative proceeding when a health care practitioner or provider is or reasonably expects to be named as a defendant, information disclosed to a health care practitioner by a patient in the course of the care and treatment of such patient is confidential and may be dis *872 closed only to other health care practitioners and providers involved in the care or treatment of the patient, or if permitted by written authorization from the patient or compelled by subpoena at a deposition, evidentiary hearing, or trial for which proper notice has been given.

Id.

Based on this plain language, the statute creates only four exceptions that allow doctors to break the privileged relationship and disclose confidential information:
(1) to other health care providers involved in the care and treatment of the patient; (2) if permitted by written authorization from the patient; (3) if compelled by subpoena; and (4) to attorneys, experts, and other individuals necessary to defend the physician in a medical negligence action in which the physician is or expects to be a defendant. No other disclosures are statutorily permitted....
Lemieux v. Tandem Health Care of Fla., Inc., 862 So.2d 745, 748 (Fla. 2d DCA 2003) (citation omitted) (footnote omitted) (citing Acosta v. Richter, 671 So.2d 149, 155-56 (Fla.1996)).
Detective Keith did not obtain a subpoena to reach confidential information from Sun’s doctors, and no other exception applies. To determine whether the doctors’ statements were “confidential,” thus triggering the requirement of a subpoena, we must define the scope of “information disclosed to a health care practitioner by a patient in the course of the care and treatment of such patient.” § 456.057(8).
The state urges a restrictive interpretation of subsection 456.057(8). To make this argument, it relies on a decision from an Ohio court, State v. Desper, 151 Ohio App.3d 208, 783 N.E.2d 939 (2002). In that case, the court confronted Ohio’s statutory doctor-patient privilege in a doctor-shopping case that involved similar questions posed by law enforcement to the defendant’s doctors. Id. at 947. The trial court had suppressed the answers law enforcement received, which the appellate court found to be error. Id. at 942, 950. Desper is, however, distinguishable. As Sun asserts, the operative language of Ohio’s statute is different from the operative language of Florida’s.
Superficially, Ohio’s statute is similar to ours because, like Florida, Ohio had no common law privilege before its adoption. Id. at 947. Thus, the privilege was “in derogation of the common law and its protections must be strictly construed.” Id. But, Ohio’s privilege protects only “com-municationfs]” that are “necessary to enable the physician ... to diagnose, treat, prescribe, or act for a patient.” Ohio Rev. Code Ann. § 2317.02(B)(1), (B)(5)(a) (emphasis added). That more limited scope excluded from the privilege a patient’s lies to his doctor, because “[a] lie is not necessary to enable a physician to diagnose, treat, prescribe, or act for the patient.” Desper, 783 N.E.2d at 949-50. Because the doctors’ answers to law enforcement disclosed only the lies the defendant told in pursuit of his doctor-shopping, the appellate court held that the trial court erred in suppressing the doctors’ statements. Id. at 950.
In contrast to Ohio’s statute, Florida’s is broader. The plain language protects information made “in the course of the care and treatment,” § 456.057(8), and is therefore not limited to information necessary for treatment. Indeed, courts have consistently held that the statute expressly created a broad doctor-patient privilege, especially in light of the earlier, more limited statutory privilege. See, e.g., Acosta, 671 So.2d at 154 (“This [statute] creates a broad and express privilege of confidential *873 ity.... [T]he primary purpose of the 1988 amendment was to create a physician-patient privilege where none existed before, and to provide an explicit but limited scheme for the disclosure of personal medical information.” (footnotes omitted)).
This legislative intent to create a broad privilege sets subsection 456.057(8) apart from other statutes in derogation of the common law. The application of the interpretive rule for such statutes — that they be strictly construed — depends on the legislature’s intent in enacting the statute and displacing the common law. See Ady v. Am. Honda Fin. Corp., 675 So.2d 577, 581 (Fla.1996) (“It is a rule of statutory construction that a statute in derogation of the common law must be strictly construed. A court will presume that such a statute was not intended to alter the common law other than by what was clearly and plainly specified in the statute.” (citations omitted)). Thus, when the legislature writes a broad statute derogating the common law, the courts will honor the legislative intent to read the statute broadly-
The supreme court has implicitly held this to be the ease with the doctor-patient privilege. In Castillo-Plaza v. Green, 655 So.2d 197, 201 (Fla. 3d DCA 1995), the third district applied the strict interpretation rule to the 1988 amendment to limit the privilege. In dissent, Judge Jorgenson understood the amendment’s plain language to broaden the scope of the privilege, supporting his reasoning with the privilege’s historical and public policy roots. Id. at 206 & n. 4 (Jorgenson, J., dissenting). When the supreme court disapproved Castillo-Plaza in Acosta, it cited Judge Jorgenson’s reasoning with approval when it concluded that the amendment’s primary purpose was to create a “broad and express privilege of confidentiality.” 671 So.2d at 154-55 & n. 7 (citing Castillo-Plaza, 655 So.2d at 206 n. 4 (Jorgenson, J., dissenting)).
Finally, the state’s argument suggests that it reads a crime or fraud exception into subsection 456.057(8). The trial judge correctly concluded that there is no such exception, and we will not interfere with the legislature’s authority by creating one. Cf. State v. Famiglietti, 817 So.2d 901, 912 n. 12 (Fla. 3d DCA 2002) (Sorondo, J., dissenting) (“In Florida, only the attorney-client privilege and the accountant-client privilege contain crime-fraud exceptions.”).
Given the language and history of Florida’s statutory doctor-patient privilege, we hold that the privilege existing between Sun and his doctors protected the statements the doctors made to Detective Keith.
D. Suppression
Having determined the items in this case fall within the ambit of the relevant statutes, and that Detective Keith did not follow the proper procedures to obtain them, we must next determine whether suppression was the proper remedy. When law enforcement does not comply with the procedural requirements of statutes like the ones here, the items obtained should be suppressed when law enforcement made no good faith effort to comply. See Johnson, 814 So.2d at 393-94.
In considering the question, we are aware that Florida is the national epicenter for prescription drug abuse, a plague that is facilitated by pill mills and doctor shopping.[3] Prosecutions like this one are *874 designed to criminally sanction those involved. However, the efforts in pursuit of that goal must still comply with the law — a compliance that law enforcement can achieve with little extra effort.
As the trial judge wrote in the order on appeal:
Given the fact that these statutes were passed into law over a decade ago, and that the State Attorney’s Office for the 15th Judicial Circuit has handled similar cases and is well aware of the mandated procedures, it is almost incomprehensible that law enforcement proceeded in the manner as they did herein. Other than one’s expectation of privacy in one’s personal effects and papers in our homes, Americans next most hold as intensely personal and private the status of their health, medical treatment, medical advice and therapy.
Suppression is the only remedy to sanction this police misconduct and deter similar misconduct. The danger of the law enforcement practices in this case are amply demonstrated by the willingness of medical professionals to surrender private medical records and engage in discussions regarding private and privileged communications concerning their treatment of individuals on the mere naked display of authority by law enforcement. Without court intervention and review as mandated by statute, countless innocent patient records are subject to examination and review by well-meaning but misguided law enforcement officials.
Moreover, the procedures mandated by statute and decisional law, which are well known to the State and have been followed in other cases, could have been easily followed and complied with in [this] prosecution! ] designed to address the pervasive problem in this community of “doctor shopping” and the drug abuse which would necessarily follow. Instead, law enforcement officials ignored the law and took investigative shortcuts to build [a] case[] that discounted the important privacy interests attendant to medical records and information.
(Citations omitted.)
We agree with the trial judge’s implicit conclusion that Detective Keith’s conduct displayed a lack of good faith to comply with the statutes. That conduct requires suppression of the medical records and confidential information that he obtained. Application of the exclusionary rule where there has not been a good faith effort to comply with subsection 456.057(8) should “instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of’ a patient. State v. White, 660 So.2d 664, 666-67 (Fla.1995) (quoting United States v. Leon, 468 U.S. 897, 919, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (quoting Michigan v. Tucker, 417 U.S. 433, 447, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974))).
Law enforcement does not have unlimited access to a person’s medical records and the confidential information he has shared with his doctors. In enacting the procedure set forth in section 456.057, our legislature struck a balance between a person’s right to keep medical matters private and the state’s interest in obtaining that information in certain circumstances. Because Detective Keith made no good faith effort to comply with that procedure, we affirm the trial judge’s suppression.
III. SUN’S CROSS-APPEAL
In the cross-appeal, Sun argues that the trial court should have also suppressed the *875 pharmacy records Detective Keith obtained without a subpoena or a warrant. We disagree.
As we recently held in State v. Wright, “the deputy’s obtaining of the pharmacy records was authorized by section 893.07(4), Florida Statutes (2009), and ... the statute does not violate Article I, Section 23 of the Florida Constitution.” 59 So.3d at 263 (Fla. 4th DCA 2011) (citing Hendley v. State, 58 So.3d 296 (Fla. 2d DCA 2011); State v. Yutzy, 43 So.3d 910 (Fla. 2d DCA 2010); State v. Tamulonis, 39 So.3d 524 (Fla. 2d DCA 2010); State v. Carter, 23 So.3d 798 (Fla. 1st DCA 2009)).
With respect to the Fourth Amendment argument Sun raises on appeal, we construe it to be an as-applied challenge and deem it waived because it was not clearly raised below. See Trushin v. State, 425 So.2d 1126, 1129-30 (Fla.1982) (“The facial validity of a statute, including an assertion that the statute is infirm because of over-breadth, can be raised for the first time on appeal.... The constitutional application of a statute to a particular set of facts is another matter and must be raised at the trial level.”); see also State v. Hodges, 616 So.2d 994, 994 n. 1 (Fla.1993) (“Such a[n] [as-applied] challenge requiring resolution of extensive factual matters cannot be raised for the first time on appeal.” (citing Trushin)). Cf. State v. Fernandez, 36 So.3d 120, 121 (Fla. 2d DCA 2010) (where the defendant expressly argued in her motion to suppress that subsection 893.07(4) was unconstitutional as applied to the inspection and seizure of her prescription records).

Affirmed.

HAZOURI and Ciklin, JJ., concur.

. We previously affirmed without opinion a similar order from the trial judge in State v. Vandyne, 50 So.3d 1151 (Fla. 4th DCA 2010) (table decision). In fact, because the facts and issues in this case were essentially the same as those in Vandyne and other consolidated doctor-shopping cases, the trial judge incorporated the order from those cases into the order on appeal in this case.

. We find support for this interpretation in the relevant rule of the Florida Administrative Code. Cf. Norman J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 31:6 & n. 1 (7th ed. 2010) (“Administrative regulations have been frequently used as guides to determine the meaning of statutory provisions.” (footnote omitted)). That rule requires physicians to keep as medical records agreements between the patient and physician. See Fla. Admin. Code R. 64B8-9.013(3)(f) (2009) (under the heading "Medical Records,” requiring physicians "to keep accurate and complete records to include, but not be limited to: ... 8. Instructions and agreements”). See also Robert I. Rubin, Police Requests for Patient Narcotics Agreements: Placing Physicians Between a Rock and a Hard Place, Fla. Med. Mag., Fall 2008, at 23, 27 ("A Narcotics Agreement is an 'instruction' or an 'agreement.' Although Florida Statute § 456.067 is silent concerning whether a Narcotics Agreement is a medical record, the Florida Administrative Code clearly states that it is a medical record, and thus is subject to confidentiality protection.”).

. See, e.g., Don van Natta Jr., Agents Raid Florida Clinics in Drug Crackdown, N.Y. Times, Feb. 24, 2011, at A16 (describing "storefront clinics in Miami-Dade, Broward *874 and Palm Beach Counties” as “a national clearinghouse for illegal prescription drugs and highly addictive painkillers like oxyco-done,” and that "South Florida has long been a place where prescription drugs could be obtained easily and cheaply”).