THOMPSON, C.J.
Brian F. Cerroni appeals both his conviction for driving under the influence resulting in serious bodily injury to another and the trial court’s decision to approve a state subpoena for Cerroni’s medical records. He contends that the trial court erred in allowing the state to subpoena his medical records, a ruling which was dis-positive of the case and led to Cerroni’s plea. We reverse.
On June 2, 1998, a police report and citations were filed in Volusia County which sought the arrest of Cerroni for driving under the influence on February 10, 1998, the date of an automobile accident involving Cerroni and Judith A. Sker-rit. The police report stated that testing of a blood alcohol specimen taken from Cerroni showed that his blood alcohol level was .097. Cerroni was charged by information with driving under the influence resulting in serious bodily injury to another. Cerroni filed a motion to suppress, asserting that his blood was drawn after the accident without a warrant and without the state following the dictates of Florida’s implied consent law. The state stipulated that there was no probable cause to support the blood draw, and the trial court granted the motion to suppress.
In response, the state filed its notice of intent to subpoena medical records. The state submitted that it intended to subpoena Cerroni’s medical records that “pertain[ed] to the blood sample taken from [Cerroni] subsequent to a vehicular accident involving a car driven by the defendant which was tested in part for alcohol content.” In other words, since the “legal blood draw” results had been suppressed, the state was seeking the “medical blood draw” results. Cerroni objected to the subpoena, and the trial court conducted a hearing on the matter.
The state argued to the trial court that it did not have a burden to demonstrate why the subpoena should issue. Over the defense’s objection, the trial court agreed with the state and approved the issuance of the subpoena.[1] The trial court acknowledged that the preliminary order was dis-positive.
Patient records are confidential and generally may not be disclosed without the consent of the person to whom they pertain. See § 395.3025(4), Fla. Stat. (2000). The state is allowed to subpoena a patient’s medical records without the patient’s consent if the state follows the requirements set out by 'the legislature in section 395.3025(4)(d), Florida Statutes (2000):
(4) Patient records are confidential and must not be disclosed without the con *152 sent of the person to whom they pertain, but appropriate disclosure may be made without such consent to:
(d) In any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice by the party seeking such records to the patient or his or her legal representative.
If the patient objects, a hearing must be held to determine if the records are relevant to a criminal investigation. Hunter v. State, 639 So.2d 72 (Fla. 5th DCA), review denied, 649 So.2d 233 (Fla.1994).
In Hunter, the defendant was involved in a two car accident in which he was injured and the other driver was killed. As a result of his injuries, he received treatment at the Orlando Regional Medical Center (ORMC). He was not arrested or taken into custody for any crime arising out of the accident. The state attorney’s office, in connection with its investigation of the accident, sought the issuance of an investigative subpoena requiring ORMC to produce “any and all copies of records that depict the blood alcohol level” of Hunter. The trial court denied Hunter’s motion to quash.
This court in Hunter observed:
Although it appears obvious that the state is seeking the patient records to determine if Hunter had been drinking alcohol on the day of the accident, the assistant state attorney never argued to the trial judge the relevancy of the patient records to the criminal investigation. In this case, the accident report, coupled with the fact that the other driver died as a result of this two car accident, makes the relevancy of the documents obvious. However, where a patient whose records are being sought properly raises an objection, it is the state’s burden to present evidence and argument to show the nexus between the medical records sought and a pending criminal investigation.
Hunter, 639 So.2d at 73-74 (citations omitted). Hunter then held as follows:
We hold that the state attorney may use an investigative subpoena to compel disclosure of a patient’s medical records, but the patient must first be given notice before the subpoena is issued. If the patient objects, the state has the obligation and the burden to show the relevancy of the records requested before the subpoena for the patient’s medical records is allowed to issue. We do not rule that a finding of relevancy is equivalent to a finding of probable cause. Id. at 74.
Id. (emphasis added).
We hold, as we did in Hunter, that the state has the obligation and burden to demonstrate relevancy, via evidence, before the subpoena may issue. The state’s failure to do so below is fatal to the order on appeal. However, the state is not precluded from again seeking the medical records through a subpoena, because the state did not in bad faith fail to comply with section 395.3025(4)(d), Florida Statutes (2000). State v. Johnson, 814 So.2d 390 (Fla.2002). If the state subpoenas the medical records again and, upon objection, proffers evidence which demonstrates the relevance of the blood-alcohol results, then the trial court may allow the issuance of the subpoena. Id.
REVERSED and REMANDED.
SAWAYA and PALMER, JJ„ concur.

. Cerroni’s counsel provided the trial court and the Assistant State Attorney with copies of State v. Rutherford, 707 So.2d 1129 (Fla. 4th DCA 1997); Hunter v. State, 639 So.2d 72 (Fla. 5th DCA 1994); State v. Wenger, 560 So.2d 347 (Fla. 5th DCA 1990); and, Ussery v. State, 654 So.2d 561 (Fla. 4th DCA 1995)