914 So.2d 484 (2005)
STATE of Florida, Appellant,
v.
Matthew Donald KUTIK, Appellee.
No. 5D04-1349.
District Court of Appeal of Florida, Fifth District.
November 4, 2005.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Lori N. Hagan, and Pamela J. Koller, Assistant Attorneys General, Daytona Beach, for Appellant.
William R. Ponall and Michael J. Snure, of Kirkconnell, Lindsey, Snure and Yates, P.A., Winter Park, for Appellee.
THOMPSON, J.
The State appeals an order granting exclusion of Matthew Donald Kutik's ("Kutik") medical records, which contained his blood alcohol test results. Kutik was in an automobile accident resulting in a death.[1] During Kutik's treatment, hospital personnel tested his blood and determined his blood alcohol level. A police officer obtained Kutik's blood alcohol level from his medical records, but did not get his permission to review the medical records and did not request that blood be drawn and tested pursuant to section 316.1933(1), Florida Statutes (2002).[2] Fourteen *485 months after the accident, the State sought a subpoena for Kutik's medical records, with notice of the request to his lawyer, pursuant to section 395.3025, Florida Statutes (2002).[3] Kutik's lawyer objected to the subpoena and sought to exclude Kutik's medical records because the State obtained the records in derogation of the statute; this misconduct precluded application of a good faith exception. After a hearing, the trial court granted the motion to exclude the medical records without recourse for the State to seek a future subpoena. We affirm, finding that the police made no good faith effort to comply with the subpoena and notice requirements of section 395.3025(4)(d). Thus, the State is precluded from issuing a future subpoena for Kutik's medical records. See State v. Johnson, 814 So.2d 390 (Fla.2002).
St. Cloud police officer Brian Demeulenaere ("Demeulenaere"), a traffic homicide investigator, testified during the hearing to exclude medical records that, at approximately 2:00 a.m. on Saturday, 14 December 2002, he investigated a traffic homicide involving Kutik. Two vehicles were involved in the accident. Demeulenaere smelled alcohol coming from Kutik's vehicle and observed beer bottles inside the vehicle. After speaking with Dawn Bays, an accident eyewitness, Demeulenaere determined that Kutik turned in front of a pickup truck, which caused the truck to strike the passenger side of Kutik's car. As a result of the accident, Kutik's front seat passenger was killed and the other occupants in both vehicles were injured. Kutik and one of his passengers were transported to the Orlando Regional Medical Center Orlando ("ORMC"). The other injured parties were taken to ORMC St. Cloud.
Demeulenaere went to ORMC approximately 15 hours after the accident to obtain Kutik's medical records. Kutik was still in the emergency room, but Demeulenaere did not attempt to speak with him. Demeulenaere explained that he could not obtain the records from ORMC until the records department opened on the following Monday. Demeulenaere testified that he had probable cause to believe that Kutik was under the influence of alcohol at the time of the accident because he observed bottles of alcohol in Kutik's vehicle, detected the odor of alcohol emanating from the vehicle, and learned from Kutik's backseat passenger, Tracy Barrett, that Kutik visited two bars before the accident. Yet, Demeulenaere did not request a blood draw.
On cross examination, Demeulenaere testified that no one reported that Kutik *486 smelled of alcohol when Kutik was taken from his vehicle. Demeulenaere testified that the deceased passenger had a blood alcohol level, and the State stipulated that the truck passengers had alcohol in their blood. Demeulenaere left ORMC after he could not obtain Kutik's medical records. On the Monday after the accident, he went to ORMC St. Cloud, where he obtained the medical records and the blood alcohol test results. To obtain the records, Demeulenaere spoke with the records clerk and gave the clerk a form provided by the St. Cloud Police Department that requested Kutik's blood alcohol records and stated that Kutik had been involved in an automobile accident causing great bodily harm or death.
Demeulenaere believed the purpose of the form was to allow a law enforcement officer with reasonable cause to request a withdrawal of a legal blood sample. However, at the time he requested Kutik's medical records, he did not realize that the form could be used only to obtain a legal blood draw, but not blood alcohol test results.[4] Rather than requesting a blood draw pursuant to section 316.1933, Demeulenaere requested Kutik's medical records because he knew that almost two days had elapsed since the accident and a new blood test would not reflect Kutik's blood alcohol level on the night of the accident. Demeulenaere took the test results to the State Attorney's office, which did not seek a subpoena for Kutik's medical records until 14 months after the accident.
The trial court granted Kutik's motion to exclude his medical records. In its order, the court found that the police made no good faith effort to comply with the subpoena and notice requirements of section 395.3025(4)(d). It held that, pursuant to Johnson, the State was precluded from using Kutik's medical records, even if the medical records were obtained a second time through proper compliance with the subpoena and notice requirements. The court noted that, in Thomas v. State, 820 So.2d 382 (Fla. 2d DCA 2002), rev. denied, 894 So.2d 973 (Fla.2005), the Second District affirmed an order denying a motion to suppress, concluding that "the officer's verbal request for the nurse to tell him the blood test results does not constitute the type of governmental misconduct that would warrant exclusion of the medical records subsequently obtained through the State's subpoena issued after proper notice to Thomas." However, the trial court concluded:

Johnson dictates a finding that the State is now barred from pursuing a second [sic] subpoena with proper notice to Defendant, and subsequently using the medical records obtained from that request. Obviously the supreme court's decision places a premium on the protection of an individual's right to medical privacy. . . . Even though the Court disagrees with the holding in Johnson, it feels constrained to follow it.
The State appeals, arguing two intertwined theories based upon Thomas. First, the State contends that the investigating officer requested and obtained Kutik's blood alcohol test results through a written form that complied with section 316.1933(2)(a).[5] Because Demeulenaere *487 had probable cause to request a legal blood draw to obtain Kutik's blood alcohol level, the court should not have excluded its subpoena request for Kutik's medical records.
Second, the State contends that, because it later attempted to obtain the medical records with a subpoena with notice to Kutik's lawyer, this court should follow the decision of the Second District in Thomas and reverse the trial court. According to the State, Thomas holds that, where an officer improperly obtains the blood alcohol test result, but would have had probable cause to request a legal blood draw, the State should not be prevented from later obtaining the medical records through a properly issued subpoena. We disagree with both contentions.
We find Johnson to be dispositive. In Johnson, the court addressed the issue of the State's failure to obtain medical records pursuant to section 395.3025 and resolved the conflict between State v. Rutherford, 707 So.2d 1129 (Fla. 4th DCA 1997), and State v. Manney, 723 So.2d 928 (Fla. 5th DCA 1999). In Johnson, the defendant was involved in an automobile accident in which the passenger died. Johnson, 814 So.2d at 391. In seeking to prosecute the defendant for DUI manslaughter, the State attempted to notify the defendant that her medical records were being subpoenaed pursuant to section 395.3025. Id. at 391-92. After diligent effort, the State was unable to locate the defendant after her discharge from the hospital to serve her notice of its request for her medical records. The State then obtained the records pursuant to an investigative subpoena. Id. at 392. Johnson moved to suppress her medical records based upon a violation of section 395.3025(4)(d). Id. The trial court granted the defendant's motion to suppress the medical records and blood tests, and the appellate court denied the State's petition for writ of certiorari; however, the Florida Supreme Court quashed the Second District's decision.[6]
The Florida Supreme Court concluded that the exclusionary rule applies where the State has not made a good faith effort to comply with the procedural requirements of section 395.3025. Nevertheless, in Johnson, the State's repeated attempts to meet the statutory requirements did not constitute failure to make a good faith effort:
Accordingly, we quash the Second District's decision in Johnson, and disapprove of the opinion in Rutherford, to the extent that it would apply the exclusionary rule any time the State failed to comply with the statute, without regard to whether the State made a good faith effort to comply with the statute. However, we also disapprove of Manney to the extent that the Fifth District would never preclude the State from using the medical records, so long as the State subsequently complies with section *488 395.3025 by establishing reasonable suspicion through the introduction of facts that are independent of the records themselves.
Id. at 394.
In this case, unlike Johnson, Demeulenaere never attempted to comply with section 395.3025. Although he went to ORMC while Kutik was there, he never sought permission to obtain Kutik's medical records or obtain a legal blood draw under section 316.1933(1). Instead, he waited until two days after the accident and went to ORMC St. Cloud to request the medical records, using a police form that does not permit a request of medical records. At the hearing, Demeulenaere admitted that he recently learned that the form is actually used only to request a blood withdrawal. He testified that his sergeant instructed him to obtain the medical records because they would otherwise obtain only a legal blood draw two days after the accident. Although Demeulenaere may not have known the statutory requirements of section 395.3025, that ignorance does not establish good faith. Sections 395.3025 and 316.1933(2)(a) have long been Florida law, and Johnson was decided in 2002. See Frank v. State, 912 So.2d 329 (Fla. 5th DCA 2005) (holding that an officer's misapprehension of the law and lack of bad faith does not constitute good faith because police officers are charged with knowledge of the law); see also Sneed v. State, 876 So.2d 1235, 1238 (Fla. 3d DCA 2004) (holding that an officer's ignorance of the law did not excuse his conduct in illegally obtaining a defendant's medical records and that his ignorance did not establish that he acted in good faith). Here, the exclusionary rule applies because the State failed to establish that its agent, Demeulenaere, made a good faith effort to comply with the statute. Frank, 912 So.2d 329.
The State cites Thomas to support its argument that Kutik's medical records should not have been excluded. There, the defendant moved to suppress her medical records containing her blood alcohol test results because the investigating officer obtained the results by interrogating the defendant's nurse without a subpoena or proper notice. 820 So.2d at 383-84. The trial court denied the motion to suppress, finding that the State later complied with the notice requirement of section 395.3025(4)(d) and that Thomas had reasonable time to object, but failed to do so. Therefore, the information contained in the medical records was admissible. Id.
The Second District also concluded that the officer would have been allowed to request a legal blood draw pursuant to section 316.1933(1) and that the officer's request for the nurse to tell him the blood results did not constitute the type of governmental misconduct that would warrant exclusion of the medical records subsequently obtained through the State's subpoena issued after proper notice. We disagree with the Second District's reading of this statute. A plain reading of this section shows that medical personnel may notify law enforcement of a patient's blood alcohol level when a patient was involved in a motor vehicle accident, the patient's blood alcohol level exceeded that allowed by law, and the patient's information was given to law enforcement a reasonable time after the results became known to the medical personnel. The purpose of the statute is to provide law enforcement probable cause to request a legal blood draw.
In this case, Demeulenaere should have requested a blood draw when he arrived at ORMC. See § 316.1933(1). He had probable cause based upon his examination of the physical evidence at the scene of the accident and the testimony of both an accident eyewitness and an injured passenger *489 in Kutik's car. More important, having failed to obtain a blood draw, Demeulenaere should have contacted the state attorney to obtain a subpoena for Kutik's medical records after notice to Kutik's attorney. However, because we find no good faith effort to comply with statutory requirements, we AFFIRM.
PLEUS, C.J., and PALMER, J., concur.
NOTES
[1] Kutik was charged with one count of DUI manslaughter, a violation of sections 316.193(3)(c)(3) and 316.193(1), Florida Statutes (2002), and two counts of DUI with serious bodily injury, violations of sections 316.193(3)(c)(2) and 316.193(1).
[2] Section 316.1933(1)(a) provides in part:

If a law enforcement officer has probable cause to believe that a motor vehicle driven by . . . a person under the influence of alcoholic beverages . . . has caused the death or serious bodily injury of a human being, a law enforcement officer shall require the person driving . . . the motor vehicle to submit to a test of the person's blood for the purpose of determining the alcoholic content thereof. . . . The law enforcement officer may use reasonable force if necessary to require such person to submit to the administration of the blood test.
Section 316.1933(2)(a) states that "the failure of a law enforcement officer to request the withdrawal of blood shall not affect the admissibility of a test of blood withdrawn for medical purposes."
[3] Section 395.3025 provides:

(4) Patient records are confidential and must not be disclosed without the consent of the person to whom they pertain but appropriate disclosure may be made without such consent to:
* * *
(d) In any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice by the party seeking such records to the patient or his or her legal representative.
[4] During the hearing, Demeulenaere admitted that he recently read the form and realized it could only be used to authorize a legal blood draw, not for the collection of medical records.
[5] Section 316.1933(2)(a)(1), provides:

Notwithstanding any provision of law pertaining to the confidentiality of hospital records or other medical records, if a health care provider, who is providing medical care in a health care facility to a person injured in a motor vehicle crash, becomes aware, as a result of any blood test performed in the course of that medical treatment, that the person's blood alcohol level meets or exceeds the blood alcohol level specified in s. 316.193(1)(b), the health care provider may notify any law enforcement officer or law enforcement agency, Any such notice must be given within a reasonable time after the health care provider receives the test result. Any such notice shall be used only for the purpose of providing the law enforcement officer with reasonable cause to request the withdrawal of a blood sample pursuant to this section.
(emphasis added).
[6] The supreme court noted that section 395.3025 was a legislative attempt to balance patients' privacy rights against legitimate access to medical records. The notification requirement permits patients to assert any legal objections they may have to subpoenas before their records are produced. See Frank v. State, 912 So.2d 329 (Fla. 5th DCA 2005).