POLEN, J.
Appellant, Juan Guardado, appeals his judgment, convicting him of DUI manslaughter (Unlawful Blood Alcohol Level (UBAL)) and sentencing him to ten years’ imprisonment. We reverse Guardado’s conviction and remand for a new trial.
On October 7, 2005, Guardado was involved in a three-vehicle crash on 1-595 in Broward County, Florida. The two passengers in Guardado’s car were killed. When Trooper Anderson arrived at the scene, he saw Guardado in the driver’s seat with injuries to his face; the other two occupants did not appear to be alive. Guardado was extracted from the car and taken to Broward General Medical Center, where Trooper Nardiello requested that blood samples be taken.[1]
On October 14, law enforcement received the toxicology results from the Examiner’s Office.[2] Thereafter, a six-count information was filed, charging Guardado with two counts of DUI manslaughter; two counts of DUI manslaughter (UBAL); and two counts of DUI property damage.[3] Guardado filed a written plea of not guilty to the two counts of DUI manslaughter (UBAL). The State then notified Guardado that it sought to subpoena his medical records. Guardado objected pursuant to sections 395.3025(4) and 456.057, Florida Statutes (2005), but the court granted the State authority to subpoena the medical records based on the State’s compelling interest. Guardado then filed an amended motion to suppress, arguing that the State’s motion to subpoena the medical records was based solely on the results of *1212 the blood draw done at the request of Florida Highway Patrol (FHP).
At the hearing on Guardado’s motion to suppress, the State stipulated that FHP did not have probable cause to take the legal blood. The hearing then proceeded to the issue of the medical blood.[4] There is no transcript from the hearing on Guarda-do’s objection to the subpoena; however, the transcript from the hearing on Guarda-do’s motion to suppress references the hearing on Guardado’s objection to the State’s subpoena. The transcript from the suppression hearing reflects that at the hearing on Guardado’s objection to the subpoena, the only evidence that the State relied on was the fact that there was legal blood. There was no other testimony, no other evidence presented, and nothing proffered by the State as far as the odor of alcohol or anything considered to be impairment of the normal facilities. At the suppression hearing, the State admitted that there was no information in the State’s file that could have constituted independent probable cause at the time the medical blood subpoena was issued.
The trial judge entered an order suppressing the legal blood draw and denying the suppression of the medical blood evidence, finding that pursuant to Hunter v. State, 639 So.2d 72 (Fla. 5th DCA 1994), and McAlevy v. State, 947 So.2d 525 (Fla. 4th DCA 2006), the relevance of the medical blood evidence was obvious and that a compelling state interest existed to support its admission. Guardado then entered a nolo contendere plea, specifically reserving the right to appeal the denial of the dispositive motion to suppress. Guar-dado was sentenced to ten years’ Florida State Prison, followed by five years’ probation, on each count, to be served concurrently. This appeal followed.
On appeal, Guardado argues that the lower court reversibly erred by failing to suppress the medical blood because the subpoena issued for the medical blood was based solely on the legal blood, which the State stipulated was unlawfully obtained. Further, Guardado argues that the State failed to establish the relevance of the medical blood because it failed to establish a nexus between the medical blood and the crash. The State argues that the lower court properly found that the medical blood was relevant because even if the medical blood evidence was initially released pursuant to a subpoena based solely on the unlawfully seized legal blood evidence, any error was harmless in that the other facts in the probable cause affidavit would have also justified the issuance of the subpoena. The State further argues that any crash plus a death always makes medical blood relevant.
Although legal conclusions are reviewed under a de novo standard of review, a trial court’s ruling on a motion to suppress is clothed with the presumption of correctness on appeal. McNamara v. State, 357 So.2d 410, 412 (Fla.1978). Patient medical records are protected under Florida’s right to privacy as well as statute. Art. I, § 23, Fla. Const.; McAlevy, 947 So.2d at 529. Section 395.3025(4)(d), Florida Statutes, is a legislative attempt to balance a patient’s privacy rights against legitimate access to medical records. State v. Johnson, 814 So.2d 390, 393 (Fla.2002). Section 395.3025(4)(d) outlines the procedure for obtaining medical records under subpoena:
*1213 (4) Patient records are confidential and must not be disclosed without the consent of the person to whom they pertain, but appropriate disclosure may be made without such consent ...
(d) In any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice by-the party seeking such records to the patient or his or her legal representative.
§ 395.3025(4)(d), Fla. Stat. (2005). If the patient objects, a hearing must be held to determine if the records are relevant to a criminal investigation. Cerroni v. State, 823 So.2d 150, 152 (Fla. 5th DCA 2002). Thus, an intrusion into a fundamental privacy right can be met by demonstrating a compelling state interest. Shaktman v. State, 553 So.2d 148, 151 (Fla.1989). A compelling state interest exists upon a showing that the materials contain information relevant to an ongoing criminal investigation. McAlevy, 947 So.2d at 529 (citing State v. Rivers, 787 So.2d 952, 953 (Fla. 2d DCA 2001)). When the State seeks a subpoena for medical records, the court can rely on the State’s argument and the accident report or probable cause affidavit to establish relevance. Id.
In Cerroni, Cerroni filed a motion to suppress, asserting that his blood was drawn after the accident without á warrant and without the State following the dictates of Florida’s implied consent law. 823 So.2d at 151. The State stipulated that there was no probable cause to support the blood draw, and the trial court granted the motion to suppress. Id. The State then filed its notice of intent to subpoena medical records that “pertain[ed] to the blood sample taken from [Cerroni] subsequent to a vehicular accident involving a car driven by the defendant which was tested in part for alcohol content.” Id. In other words, since the “legal blood draw” results had been suppressed, the State was seeking the “medical blood draw” results. Id. Cerroni objected to the subpoena, and after a hearing, the trial court approved its issuance and also acknowledged that the order was dispositive. Id.
On appeal, the Fifth District held that the State had the obligation and burden to demonstrate relevancy, via evidence, before the subpoena could issue, and the State’s failure to do so below was fatal to the order on appeal. Id. at 152. However, the court held that the State was not precluded from again seeking the medical records through a subpoena, because the State did not, in bad faith, fail to comply with section 395.3025(4)(d): “If the state subpoenas the medical records again and, upon objection, proffers evidence which demonstrates the relevance of the blood-alcohol results, then the trial court may allow the issuance of the subpoena.” Id.
Here, the trial court relied on Hunter and McAlevy in denying Guardado’s motion to suppress the medical blood. In Hunter, the court stated that although it appeared obvious that the State sought the records to determine if Hunter had been drinking alcohol on the day of the accident, the State never argued to the trial judge the relevancy of the patient records to the criminal investigation. 639 So.2d at 73. However, the Fifth District held that the accident report, coupled with the fact that the other driver died as a result of the two-car accident, made the relevancy of the documents obvious. Id. In McAlevy, the court held that in determining whether the State had shown a nexus between the medical records and the pending criminal investigation, a trial court can “rely upon the state’s argument and the probable cause affidavit (akin to an accident report, as in Hunter).” 947 So.2d at 530 (emphasis added).
*1214 Hunter is distinguishable from the present case because in Hunter there was record evidence presented by the State to show both a compelling state interest and that the medical records sought were relevant to the criminal investigation. Here, aside from the unlawfully obtained legal blood evidence, the State failed to show a nexus between the medical records sought and the pending investigation. Instead, the State simply relied on the inadmissible legal blood to obtain the medical blood. The State did not rely on any lawful evidence which showed any nexus between Guardado’s medical blood and the traffic crash investigation, i.e., no police reports, arrest affidavits, or other documents were presented to the court. Finally, the State’s theory, “a crash plus a death always makes medical blood relevant,” is not the law.
The “crash plus death” standard has been held to create only part of the basis to establish relevance. For example, in Hunter the court noted that although the State failed to argue the relevancy of the medical records to the criminal investigation, the court found that “the accident report, coupled with the fact that the other driver died ... [made] the relevancy of the documents obvious.” Hunter, 639 So.2d at 73 (emphasis added). Similarly, in McAlevy, the court stated that the lower court was correct in relying on the “state’s argument and the probable cause affidavit (akin to the accident report in Hunter).” 947 So.2d at 530 (emphasis added). Thus, although the State correctly contends that it can properly rely upon the probable cause affidavit and argument to establish relevance pursuant to Hunter and McAlevy, there is no evidence in the record that the State actually relied on the probable cause affidavit at the hearing on Guardado’s objection to the issuance of the subpoena. Although there is no transcript in the record of said hearing, the State’s acknowledgment at Guardado’s hearing on his motion to suppress, that it did not proffer any other proof other than the legal blood, proves that it did not rely on the probable cause affidavit at the hearing to establish relevance. Consequently, the State’s “crash plus death” argument, standing alone, falls short of the relevancy requirements set forth in Hunter and McAlevy.
We hold that Cerroni is indistinguishable from the present case and reverse the trial court’s order denying the suppression of the medical blood because the State failed to establish a nexus between the medical blood and the crash. However, on remand, the State is not precluded from again seeking the medical records through a subpoena if it proffers evidence which demonstrates the relevance of the medical blood evidence, as its actions below did not rise to the level of bad faith. See Cerroni, 823 So.2d at 152 (holding that “the state is not precluded from again seeking the medical records through a subpoena, because the state did not in bad faith fail to comply with section 395.3025(4)(d)”; “[i]f the state subpoenas the medical records again and, upon objection, proffers evidence which demonstrates the relevance of the blood-alcohol results, then the trial court may allow the issuance of the subpoena.”).

Reversed.

GROSS, C.J., and DAMOORGIAN, J., concur.

. Two samples were taken; the first at 4:57 a.m. and the second at 5:57 a.m. The blood specimens were sent by Trooper Nardiello to the Broward County Medical Examiner’s Office.

. The results for the first blood kit were .215 and .218 grams ethanol alcohol per 100 milliliters of blood; the results for the second kit were .197 and .194.

.The State entered a nolle prosequi on the DUI manslaughter counts and the DUI property damage counts.

. The legal blood draw refers to the draw done at the request of FHP; the medical blood draw refers to the draw performed by the hospital in order to treat Guardado for his injuries.