KELLY, Judge.
In this DUI manslaughter case, the State appeals from the trial court’s order suppressing Sandy Salle-Green’s legal and medical blood alcohol level test results. Because Salle-Green failed to show that the State improperly obtained her medical blood alcohol test results, we reverse.
Salle-Green was the driver of a vehicle involved in a collision in which the driver of the other vehicle died. Salle-Green was transported by helicopter to the hospital before law enforcement officers arrived. On his way to the scene of the collision, Corporal Brown, the traffic homicide investigator, directed Trooper Moseley to go to the hospital to check on Salle-Green’s status. Trooper Moseley provided the nurse on duty with a “legal blood draw kit” to obtain a blood sample from Salle-Green. He did not prepare a police report describing the events preceding the administration of the test.
*1171 Subsequently, Salle-Green was charged with DUI manslaughter. She filed a motion to suppress her blood test results. At the hearing on the motion, Trooper Moseley identified the legal blood draw kit and the associated paperwork, but he could not independently recall what led him to request the blood draw to be performed. Trooper Moseley stated that he had “never gotten any information from a nurse prior to or even after doing a legal blood draw.” He could not even recall getting a legal blood sample but was able to identify his own signature on a “consent form.”
Nurse Bell testified that she did not remember the events of the evening, but she confirmed her signature on the legal blood draw kit and described the general procedure for conducting a blood draw. She testified that hospital policy was that “we can verbally give [a law enforcement officer] the blood alcohol level of a patient if it has to do with an injury or a vehicle crash.” She could not remember whether she told Trooper Moseley the results of the medical blood alcohol test or whether she showed him a lab report.
Following this testimony, the trial court concluded that it had no choice but to grant the motion to suppress because the witnesses “were not able to provide this court with the reason why this blood was requested.” The court found that the State failed to present any probable cause to justify the legal blood draw and that no testimony was received to justify admission of any of Salle-Green’s medical records. The trial court’s order suppressed both the legal and medical blood alcohol evidence.
The State then filed a motion to “resub-poena” Salle-Green’s medical records. At the hearing on that motion, the State acknowledged that the motion was better phrased as either a motion for the court to reconsider its ruling suppressing the medical records or as a motion to “cure” by resubpoena. The State conceded that at the first hearing it did not establish a factual basis to obtain the legal blood alcohol test results under section 316.1933, Florida Statutes (2007). However, the State contended that it had additional evidence which provided an independent basis to obtain Salle-Green’s medical records under section 395.3025(4)(d), Florida Statutes (2007).
The court stated that the State already had the evidence that it was seeking to subpoena and that a ruling from the court on the motion would be a “waste of paper.” In response to the court’s concerns, the State explained that, although it had the evidence it was seeking to resubpoena, the court’s suppression ruling prevented its admission into evidence. Thus, the State was providing an independent basis to admit the evidence. Although the court expressed its consternation that the State failed to present the evidence at the suppression hearing, the court agreed to receive the State’s supplemental evidence from Corporal Brown, the officer in charge of the crime scene investigation.
Corporal Brown testified that he was dispatched to the accident on August 20, 2007, at around 11:00 p.m. He did not have information about the crash when he asked dispatch to send a trooper to the hospital where Salle-Green was being treated. He surveyed the scene, obtained the names of witnesses, and photographed and inspected the vehicles. He recovered an open bottle of liquor from Salle-Green’s car in the area between the driver’s seat and the center console. Witnesses informed him that Salle-Green had been driving approximately 100 miles per hour before the crash. He later interviewed the EMS personnel who transported Salle-Green to the hospital. One of the paramedics advised Corporal Brown that he detected a strong *1172 odor of alcohol coming from Salle-Green’s breath.
Following receipt of Corporal Brown’s testimony, the defense argued that the State acted in bad faith in obtaining the blood alcohol test results and that it should be barred from another attempt to lawfully obtain the medical record evidence. The State responded that it should be able to resubpoena the medical records based on independent evidence.
Ultimately, the court declined to reconsider its suppression ruling based on the State’s failure to introduce Corporal Brown’s testimony at the suppression hearing the week before. The court acknowledged that Corporal Brown’s testimony “may have been able to establish the probable cause to get [the medical] records” because “[t]he threshold is actually fairly low for the State to obtain the medical records.” Despite noting that had the motion to suppress been done properly the first time the court’s ruling may have been different, the court declined reconsideration.
Legal Blood Test Results Under Section 316.1933
A law enforcement officer may request that a blood test be conducted on a person involved in a crash when (1) the officer has independent probable cause to believe that the person was driving under the influence, see § 316.1933(l)(a); or (2) a healthcare provider has informed the officer that the patient’s medical blood test results show a blood alcohol level that is over the legal limit, see § 316.1933(2)(a)(l).[1] In this case, Trooper Moseley’s testimony did not establish either that he had probable cause before requesting the legal blood draw or that Nurse Bell had informed him Salle-Green’s medical blood test showed an alcohol level above the legal limit. Therefore, the trial court properly suppressed the legal blood draw test results. See State v. Webb, 753 So.2d 145 (Fla. 3d DCA 2000) (affirming the trial court’s suppression of legal blood test results where there was no evidence that the officer, before ordering the blood draw, had probable cause to believe that the driver was under the influence of any substance at the time of the accident).
Medical Blood Test Results Under Section 395.3025(4)(d)
“A patient’s medical records enjoy a confidential status by virtue of the right to privacy contained in the Florida Constitution, and any attempt on the part of the government to obtain such records must first meet constitutional .muster.” State v. Johnson, 814 So.2d 390, 393 (Fla.2002). However, “[t]he right to privacy is not absolute and will yield to compelling governmental interests.” Id. Section 395.3025(4), provides exceptions to the general rule requiring patient confidentiality. Pertinent to this case is subsection (4)(d), which states as follows:
(4) Patient records are confidential and must not be disclosed without the consent of the person to whom they pertain, *1173 but appropriate disclosure may be made without such consent....
[[Image here]]
(d) In any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice by the party seeking such records to the patient or his or her legal representative.
Salle-Green argues that having failed to establish that Trooper Moseley had probable cause to obtain her blood test results, the State should be barred from having a second chance to obtain her blood test results by subpoenaing her medical records under section 395.3025(4)(d). We disagree.
The record does not demonstrate that Trooper Moseley acted improperly. Cf. Frank v. State, 912 So.2d 329 (Fla. 5th DCA 2005) (holding that where an investigating police officer obtained the defendant’s medical records from the hospital eight weeks after the crash without complying with the notice requirements of section 395.3025, the improperly obtained evidence must be excluded); State v. Kutik, 914 So.2d 484 (Fla. 5th DCA 2005) (holding that suppression of medical records was required where a police officer obtained the defendant’s medical blood test results but did not comply with section 395.3025 and did not request that blood be drawn and tested pursuant to section 316.1933(1)). Trooper Moseley testified that he went to the hospital to determine Salle-Green’s status. Under section 316.1933(2)(a)(l), Trooper Moseley would have been authorized to request a blood sample if a doctor or nurse had notified him that Salle-Green’s blood alcohol level was above the legal limit. Trooper Moseley and Nurse Bell each testified that a legal blood draw was in fact performed but could not positively state, for lack of memory, that it was because of Salle-Green’s medical test results. The trooper’s actions do not amount to bad faith requiring the suppression of Salle-Green’s medical records. See Thomas v. State, 820 So.2d 882, 383-84 (Fla. 2d DCA 2002) (noting that the officer’s verbal request for the nurse to tell him the defendant’s blood test results did not warrant exclusion of medical records subsequently obtained through the State’s subpoena issued after proper notice.)
Accordingly, we reverse the trial court’s order suppressing Salle-Green’s medical blood alcohol test results.
Reversed.
DAVIS and BLACK, JJ., Concur.

. Section 316.1933(2)(a)( 1) states the following:
[IJf a health care provider, who is providing medical care in a health care facility to a person injured in a motor vehicle crash, becomes aware, as a result of any blood test performed in the course of that medical treatment, that the person’s blood-alcohol level meets or exceeds the blood-alcohol level specified in s. 316.193(1 )(b), the health care provider may notify any law enforce^ ment officer or law enforcement agency.... Any such notice shall be used only for the purpose of providing the law enforcement officer with reasonable cause to request the withdrawal of a blood sample pursuant to this section.