DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Petitioner,

v.

**ROBERT THOMAS TAVENESE,**
Respondent.

No. 4D21-57

[May 26, 2021]

Petition for writ of certiorari from the County Court for the Fifteenth Judicial Circuit, Palm Beach County; Leonard Hanser, Judge; L.T. Case Nos. 2020-AP-000089-AXXX-MB and 2020-CT-004180-AXXX-SB.

Ashley Moody, Attorney General, Tallahassee, and Jonathan P. Picard, Assistant Attorney General, West Palm Beach, for petitioner.

Carman John Leon, Jr., Deerfield Beach, for respondent.

PER CURIAM.

The State petitions for certiorari review of the denial of its motion for authorization to execute a subpoena to obtain emergency room records and toxicology reports. Because the State met its burden to obtain an investigative subpoena, we grant this petition.

## Background

Respondent Robert Tavenese was charged with driving under the influence, causing damage or injury (enhanced). The probable cause affidavit alleged Respondent's vehicle crashed into a concrete pole after colliding with another vehicle. Shortly after the accident, Respondent admitted to an officer of the Delray Beach Fire Department that he had consumed alcohol earlier that evening. Respondent exhibited signs of intoxication and required assistance from Delray Beach Fire Department personnel to keep from falling as he walked to the ambulance.

Respondent sustained a head injury as a result of the collision, so Delray Beach Fire Department transported him to Delray Medical Center.

Once there, Respondent consented to a blood draw, which was collected using a law enforcement blood draw kit. The Palm Beach County Crime Laboratory Toxicology Unit tested the blood, which indicated Respondent's blood alcohol level at the time of the draw was 0.16 grams of alcohol per 100 milliliters of blood.

The State subsequently sought authorization from the trial court to execute an investigative subpoena for medical records from Delray Beach Fire Department and Delray Medical Center, including: (1) any toxicology reports; (2) any records containing Respondent's admissions to consumption of alcohol, controlled substances, and/or chemical substances; and (3) any records containing descriptions of Respondent's physical appearance and/or impaired physical/mental state.

The trial court held a hearing on the motion. Defense counsel objected to the subpoena on the basis that the records were protected under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Defense counsel also claimed the State was on a "fishing expedition."

Following the hearing, the trial court entered two orders. One order granted the State's motion as to Delray Beach Fire Department records. The other order denied the State's motion as to Delray Medical Center records, finding that, "based on the fact that the State has legal blood results, the State is precluded from obtaining Hospital Records from Delray Medical Center." The State petitions for review of this order.

## Analysis

"To be entitled to a writ of certiorari, a party must demonstrate both material injury that cannot be remedied on plenary appeal (irreparable harm) and a departure from the essential requirements of law." *Sovereign Healthcare of Port St. Lucie, LLC v. Fernandes*, 132 So. 3d 855, 857 (Fla. 4th DCA 2013). "A departure from the essential requirements of law is more than mere legal error; it is 'a violation of a clearly established principle of law resulting in a miscarriage of justice.'" *Broward Cnty. Sheriff's Office v. Hamby*, 300 So. 3d 213, 215 (Fla. 4th DCA 2020) (quoting *Haines City Cmty. Dev. v. Heggs*, 658 So. 2d 523, 529 (Fla. 1995)). The State may seek certiorari review of pretrial orders that substantially impair its ability to prosecute its case. *State v. Pettis*, 520 So. 2d 250, 253 (Fla. 1988).

The State argues that it is entitled to the medical records and that *State v. Rivers*, 787 So. 2d 952 (Fla. 2d DCA 2001), is directly on point. Respondent relies on *Guardado v. State*, 61 So. 3d 1210 (Fla. 4th DCA

2011), and *Cerroni v. State,* 823 So. 2d 150 (Fla. 5th DCA 2002), as support for his response that the State failed to establish the necessary nexus between the medical records sought and the pending criminal investigation.

While a patient's medical records are protected under Florida's constitutional right to privacy, Art. I, § 23, Fla. Const., that right to privacy may be overcome by the showing of a compelling state interest. *Rivers,* 787 So. 2d at 953. "Such an interest exists where there is a reasonable founded suspicion that the materials contain information relevant to an ongoing criminal investigation." *Id.* (citing *Hunter v. State,* 639 So. 2d 72, 74 (Fla. 5th DCA 1994); *State v. Rutherford,* 707 So. 2d 1129, 1131 (Fla. 4th DCA 1997)).

In *Rivers,* the defendant was charged with driving under the influence, causing serious bodily injury. 787 So. 2d at 953. "The State sought authorization from the trial court to execute an investigative subpoena for emergency room medical records and toxicology reports." *Id.* The State contended the records and reports would indicate whether the defendant was under the influence at the time of the crash. *Id.*

The defendant "argued against the discovery and noted that the State already had blood draw evidence." *Id.* The State replied that "the blood draw evidence may be suppressed or excluded at trial." *Id.* "The trial court denied the State's motion without prejudice, reasoning that because the State already had the results of a legal blood draw, discovery of [] other medical records and reports was" unnecessary. *Id.* "The trial court left open the possibility that the State could renew its request when 'the medical blood related evidence becomes more relevant.'" *Id.*

On appeal, the Second District held that the State met its burden and demonstrated that the emergency room records and toxicology reports were directly related to the incident that led to the criminal charges and ongoing criminal investigation. *Id.* at 953–54. The Second District noted, "[t]he fact that the State had other incriminating evidence against [the defendant] was not a proper basis to prevent execution and issuance of the investigative subpoena." *Id.* at 954.

As it did in *Rivers,* the State in the instant case sought authorization to execute an investigative subpoena for hospital records following Respondent being charged with driving under the influence. Also as in *Rivers,* the State met its burden of showing a compelling State interest by demonstrating a reasonable founded suspicion that the medical records

contained information relevant to the ongoing criminal investigation, contrary to Respondent's assertion.

Moreover, "[w]hen the State seeks a subpoena for medical records, the court can rely on the State's argument and the accident report or probable cause affidavit to establish relevance." *Guardado*, 61 So. 3d at 1213); *see also McAlevy v. State*, 947 So. 2d 525, 530 (Fla. 4th DCA 2006) (holding that, in determining whether the State had shown a nexus between the medical records and a pending criminal investigation, the court could "rely upon the [S]tate's argument and the probable cause affidavit").

For example, in *Hunter*, the State sought a subpoena for medical records related to the defendant's blood alcohol level after he was involved in a car accident that resulted in injury and death. 630 So. 2d at 73. The State, however, never argued to the trial court the relevancy of the patient records to the criminal investigation. *Id.*

The Fifth District nevertheless held that the accident report, coupled with the fact the driver of the car the defendant collided with died as a result of the accident, made the relevancy of the documents obvious, despite the lack of State argument. *Id.* Thus, the Fifth District held that record evidence showed both a compelling state interest and that the medical records sought were relevant to the criminal investigation. *See id.* at 73–74.

Respondent argues the only evidence the State relied on to establish the relevancy of the medical records to the ongoing criminal investigation was the fact he crashed his car and his blood alcohol level at the time of the blood draw was 0.16 grams of alcohol per 100 milliliters of blood. Additionally, while Respondent concedes the State can properly rely on the probable cause affidavit, he argues no evidence in the record demonstrates the State did so at the hearing.

At the hearing, the State immediately began by relying on the probable cause affidavit to recite the allegations to the trial court. The State then argued the relevancy of the medical records by stating:

> The State is entitled to any of the potentially relevant toxicology reports, observations.
>
> And it's not just that there was blood, but if there's other witnesses that may be useful to the defense or the State, Fire Rescue personnel, all of the observations that they made on scene and they transported him to the medical center; at the

4

medical center, if there was (sic) any toxicology reports that are made there and observations by any nurses. We'll be able to get any other – any other witnesses from both of those.

Thus, we reject Respondent's contention that there is no evidence in the record demonstrating the State actually relied on the probable cause affidavit at the hearing. Even if this assertion were true, the *Hunter* court did not specify the State must rely on the probable cause affidavit at the hearing to demonstrate the records are relevant to the ongoing criminal investigation.

As in *Hunter* (which involved an accident report), the probable cause affidavit in the instant case—which stated Respondent admitted to consuming alcohol earlier in the evening of the crash, demonstrated signs of intoxication, and required assistance to walk to the ambulance— coupled with the fact that he collided with another car before crashing into a concrete pole, made the relevancy of the records obvious. Thus, the State not only argued the relevancy of the hospital medical records at the hearing but also demonstrated through the probable cause affidavit that they were relevant to the ongoing criminal investigation.

We also reject Respondent's assertion that *Guardado* and *Cerroni* support the trial court precluding the State from subpoenaing the hospital medical records. Both cases are factually distinguishable because, unlike here, the State in those cases failed to present any legally obtained evidence of impairment to establish relevancy. *Guardado*, 61 So. 3d at 1213–14; *Cerroni*, 823 So. 2d at 151–52.

Finally, we note HIPAA does not prevent the State from subpoenaing relevant medical records in a criminal proceeding, contrary to Respondent's argument at the hearing. *See United States v. Wilk*, 572 F.3d 1229, 1236 (11th Cir. 2009).

## Conclusion

Because the State met its burden, we grant the petition for writ of certiorari, quash the order that precluded the State from obtaining the hospital medical records, and direct the trial court to authorize the State to issue the subpoena.

*Petition granted.*

GROSS, CIKLIN and FORST, JJ., concur.

5

\*         \*         \*

*Not final until disposition of timely filed motion for rehearing.*