DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Petitioner,

v.

**ROBERT SEAN SHAUL,**
Respondent.

No. 4D21-82

[June 2, 2021]

Petition for writ of certiorari to the County Court for the Fifteenth Judicial Circuit, Palm Beach County; Leonard Hanser, Judge; L.T. Case Nos. 50-2020-CT-011503-AXXX-SB and 50-2020-AP-000090-AXXX-MB.

Ashley Moody, Attorney General, Tallahassee, and Jonathan P. Picard, Assistant Attorney General, West Palm Beach, for petitioner.

No brief filed on behalf of respondent.

CIKLIN, J.

The state seeks certiorari review of the denial of its motion for authorization to execute a subpoena to obtain emergency room records and toxicology reports. Because the state met its burden to obtain an investigative subpoena, we are compelled to grant this petition.

### *Background*

The petitioner, Robert Sean Shaul, was charged with driving under the influence, causing property damage. The probable cause affidavit alleged: (1) Shaul's vehicle struck a mailbox and telephone pole; (2) an officer smelled the odor of cannabis; (3) Shaul was slurring his speech, staggering to the curb, and moving slowly and lethargically; and (4) Shaul had glassy and bloodshot eyes.

Shaul was transported to a local hospital where he consented to a "legal" blood draw at the request of law enforcement.[1] The state's toxicologist tested the blood and identified various substances that, for whatever reason, are not specified in the record.

The state moved for authorization to execute an investigative subpoena for medical records containing information indicating whether Shaul was under the influence of alcohol or controlled substances at the time of his offense. The state sought: (1) any toxicology reports; (2) any records containing Shaul's admissions to consumption; and (3) any records containing descriptions of Shaul's physical appearance and/or impaired physical and mental state. Shaul objected to the discovery, arguing that the state already had blood draw evidence.

At the hearing on its authorization motion, the state argued that the medical records were relevant because they "could be inculpatory in that [the records] might have additional blood results, observations. But [the records] could also be exculpatory in showing that the Defendant [may] not have been impaired. So it's relevant for both sides." The state further offered that it was seeking the medical records because the legal blood draw evidence may be subject to suppression.

The trial court deferred ruling on the motion but found that "based on the fact that the State has legal blood results, the State is precluded from obtaining Hospital records[.]" The trial court held that the records were not relevant "until and unless the legal blood is found to be inadmissible."

### Discussion

"To be entitled to a writ of certiorari, a party must demonstrate both material injury that cannot be remedied on plenary appeal (irreparable harm) and a departure from the essential requirements of law." *Sovereign Healthcare of Port St. Lucie, LLC v. Fernandes*, 132 So. 3d 855, 857 (Fla. 4th DCA 2013) (citation omitted). "A departure from the essential requirements of law is more than mere legal error; it is a violation of a clearly established principle of law resulting in a miscarriage of justice." *Broward Cnty. Sheriff's Office v. Hamby*, 300 So. 3d 213, 215 (Fla. 4th DCA

---

[1] The term "legal blood draw" typically refers to blood taken at the request of law enforcement pursuant to section 316.1933, Florida Statutes, while the term "medical blood draw" typically refers to blood taken at the hospital for purposes of treatment. *See State v. Salle-Green*, 93 So. 3d 1169, 1172-73 (Fla. 2d DCA 2012); *Guardado v. State*, 61 So. 3d 1210, 1212 n.4 (Fla. 4th DCA 2011).

2020) (quotation marks and citations omitted)). The state may seek certiorari review of pretrial orders that "effectively negate" its ability to prosecute a case. *State v. Pettis*, 520 So. 2d 250, 253 (Fla. 1988).

While a patient's medical records are profoundly protected under the right to privacy found in article I, section 23 of the Florida Constitution, that right to privacy may be overcome by the showing of a compelling state interest. *State v. Rivers*, 787 So. 2d 952, 953 (Fla. 2d DCA 2001). "Such an interest exists where there is a reasonable founded suspicion that the materials contain information relevant to an ongoing criminal investigation." *Id.* "If the patient objects to disclosure, the State has the burden to establish the relevancy of the medical records which it seeks to obtain." *Id.* "[T]he court can rely on the State's argument and the accident report or probable cause affidavit to establish relevance." *Guardado*, 61 So. 3d at 1213 (citation omitted)).

*Rivers*, 787 So. 2d 952, is directly on point. There, the defendant was charged with driving under the influence, causing serious bodily injury. *Id.* at 953. The state sought authorization from the trial court to execute an investigative subpoena for emergency room medical records including toxicology reports. *Id.* The state contended the records and reports would indicate whether the defendant was under the influence at the time of the accident. *Id.*

The defendant argued against the discovery and noted that the state already had blood draw evidence. *Id.* The state responded that the blood draw evidence could be suppressed or excluded at trial. *Id.* The trial court denied the state's motion without prejudice, reasoning that the state already had the results of a legal blood draw, so discovery of other medical records and reports was unnecessary. *Id.* The trial court left open the possibility that the state could renew its request when "the medical blood related evidence becomes more relevant." *Id.*

On appeal, the Second District held that the state met its burden and demonstrated that the emergency room records and toxicology reports were directly related to the incident that led to the criminal charges and ongoing criminal investigation. *Id.* at 953-54. The Second District noted "[t]he fact that the State had other incriminating evidence against [the defendant] was not a proper basis to prevent execution and issuance of the investigative subpoena." *Id.* at 954.

As in *Rivers*, here, the state sought authorization to execute an investigative subpoena for hospital records following Shaul being charged with driving under the influence, whereupon Shaul objected based on the

fact that the state already had blood draw evidence. Nonetheless, as in *Rivers*, the state met its burden of showing a compelling state interest by demonstrating that the medical records "were directly related to the incident which led to the charges . . . and the ongoing criminal investigation." *Id.* at 953-54. Given that the probable cause affidavit alleged that Shaul's vehicle struck a mailbox and telephone pole, that the officer smelled the odor of marijuana, and that Shaul was exhibiting signs of impairment, the state demonstrated a reasonable founded suspicion the materials would contain information relevant to the DUI investigation. The fact that the state had other incriminating evidence against Shaul was not a proper basis to prevent execution of the subpoena.

Because the state met its burden, we grant the petition for writ of certiorari, quash the order that precluded the state from obtaining the hospital medical records, and direct the trial court to authorize the state to issue the subpoena.

*Petition granted.*

LEVINE, C.J., and MAY, J., concur.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***